THE BALTIMORE AND OHIO RAILROAD COMPANY *vs.* THE STATE OF MARYLAND, use of MINNIE F. HAUER, and others.

*Foreign commissions to take Evidence—Notice of the filing of Interrogatories—Waiver of Notice—Insufficient ground for the Reversal of a Judgment—Carriers of Passengers—Negligence—Contributory negligence—Want of Ordinary care—Onus of Proof—Degree of Care required of Carriers of Passengers—Death by Negligence—What, Passenger entitled to assume in respect of a Railroad Company in the Regulation of its Trains at a Station—Sections 1 and 2, of Article 65, of the Code—Right of Adult children to Share in the Damages awarded for the Negligent killing of their Father— Remedy for Excessive damages.*

It is the settled practice in this State, that, in the execution of foreign commissions to take evidence, no notice to the parties of the time and place of the execution of the commission is necessary. All the notice required to the opposite party is that of the interrogatories filed to be sent out with the commission.

Actual or constructive notice, however, of the filing of the interrogatories, should be given to the opposite party, in time to enable him to exhibit cross-interrogatories, before the commission is sent out.

Interrogatories in chief were filed before a commission was issued, and were served on the attorney of the defendant, and the attorney wrote at the foot of the interrogatories thus served upon him, " Let commission issue as proposed." HELD:

That this must be taken as a waiver of all further service of the interrogatories, and of all further delay of the commission.

Where the jury are fully and explicitly instructed upon the subject of the measure of damages, and the principles upon which, they were to be assessed, the admission in evidence of facts not material to any question to be passed upon by the jury, the consideration of which is excluded by the instructions, affords no sufficient ground for a reversal of the judgment.

Balt. & Ohio R. R. Co. *vs.* State, use of Hauer, *et al.*

Although the agents and employés of a railroad company may be guilty of gross negligence in the manner of operating its road, yet if a passenger, in passing from one train to another, recklessly, and without care, fails to pay heed to timely warnings, and attempts to cross the track in front of an approaching train that he in fact sees approaching, or which he knows to be approaching in dangerous proximity, and is killed or injured, such accident is attributable, not to the negligence of the railroad company, but to the reckless negligence of the injured party himself.

In an action for damages for injuries resulting from the alleged negligence of the defendant, the want of ordinary care on the part of the person injured, is matter of defence, and the *onus* of proof of the fact is on the defendant.

While carriers of passengers are not insurers of absolute safety, they are bound to exercise reasonable care according to the nature of their contract; and as their employment involves the safety of the lives and limbs of their passengers, the law requires the highest degree of care which is consistent with the nature of their undertaking.

The party injured was a passenger, with a ticket that entitled him to be carried safely from H. to F. By the regular route and mode of carriage it was necessary for him to change cars at W., and to cross over the intervening track of the defendant from one train to another. HELD:

1st. That in making this transit from one train to the other he continued to be a passenger of the defendant, and entitled to the protection that the highest degree of care on the part of the defendant could afford under the circumstances.

2nd. That the general rule that applies in ordinary cases of parties crossing railroad tracks, that they should stop, look, and listen, before making the venture, does not apply to such a case as this.

3rd. That passengers are justified in assuming that the company has, in the exercise of due care, so regulated its trains that the road would be free from interruption or obstruction when trains stop at a depot or station, to receive and discharge passengers.

In actions under the first and second sections of Article 15 of the Code, the adult children of a deceased person, whose death was caused by the negligence of another, are entitled to a compensation equivalent to the pecuniary benefits which they might have reasonably expected from the continuance of the life of the deceased.

Balt. & Ohio R. R. Co. *vs.* State, use of Hauer, *et al.*

Where no question is made in the Court below as to the legal insufficiency of the evidence to show pecuniary loss to any of the parties, the only remedy for excessive damages, is with that Court on motion for a new trial.

APPEAL from the Circuit Court for Frederick County.

The case is stated in the opinion of the Court.

*First* and *Second Exceptions,* stated in the opinion of the Court.

*Third Exception.*—The plaintiff offered the seven following prayers:

1. If the jury shall find from the evidence, that on the 4th day of June, 1880, Luther Hauer was a passenger in the cars of the defendant, with a ticket entitling him to ride from Hagerstown to Frederick; that he took the train at Hagerstown, and rode thereon to Weverton; that it then became necessary for him to change cars, alighting from said train and passing over certain tracks of the defendant's road to get to another train, called by the witnesses "The Winchester Accommodation Train," in continuation of his said journey to Frederick, and that in so crossing over said tracks to get to said last named train, he was killed by the locomotive and cars of a freight train of the defendant, while operated by its agents on its road, and that the equitable plaintiffs are related to him in the manner as set forth in the pleadings herein, and that the said killing resulted directly from the want of the exercise of ordinary care and prudence on the part of the agents of the defendant, and not from the want of ordinary care and prudence of the deceased, contributing to the accident, then the plaintiffs are entitled to a verdict.

2. That even if the jury shall find that the said Hauer was guilty of the want of ordinary care and prudence in crossing the track of the defendant at Weverton, under the circumstances testified before them; yet, if the jury

further find, that if the agents of the defendant had used, in and about the running of the freight train that injured him, ordinary prudence and care in giving reasonable and usual signals of its approach, in keeping a reasonable look-out, and in heeding the danger signals from the station at Weverton, if they find such were given, or in giving the danger signal to the approaching freight train, that the said accident would not have occurred, then the plaintiffs are entitled to recover; provided, they find the facts set out in the first instruction of the plaintiffs.

3. That if the jury shall find from the evidence, that it was necessary for the deceased, in order to take the Winchester accommodation train, then on the south track of the defendant's road at Weverton, if the jury so find, to cross the north track of said defendant's road, and that said Winchester train was then engaged in receiving and discharging passengers, all of whom were compelled to cross said north track, in going either to or from said train, and that passengers were passing, and did pass across said north track, that then the deceased had the right to consider, that these circumstances amounted to an implied invitation on the part of the defendant to the deceased, to cross the said north track, and to an implied assurance, that it would be safe for him to do so.

4. That in considering the question of negligence, it is competent for the jury, in connection with the other facts and circumstances of the case, to infer the absence of fault on the part of the deceased, from the general and known disposition of men to take care of themselves, and to keep out of the way of difficulty and danger.

5. That if the jury shall find from the evidence, that the deceased, on the night of June 3rd, and the morning of June 4th, had used intoxicating drink, as testified to by conductor Peters, and witnesses Yohn, and Hurley; but shall further find, that he was not drunk when he crossed the defendant's track at Weverton, as mentioned

Balt. & Ohio R. R. Co. *vs.* State, use of Hauer, *et al.*

in first prayer, such use of intoxicating drink, is not evidence from which the jury may infer the want of ordinary care and prudence on his part.

6. That if the jury shall find for the plaintiffs, then in assessing the damages, they are to estimate the reasonable probabilities of the life of the deceased, Hauer, and give his children, the equitable plaintiffs, such pecuniary damages, not only for past losses, but for such prospective damages as the jury may find that they have suffered, or will suffer, as the direct consequence of the death of the said Hauer.

7. That if the jury shall find for the plaintiffs, that then, in awarding the damages to which the plaintiffs are entitled, they must apportion the same among the equitable plaintiffs, in such shares, respectively, as they shall find and direct.

And the defendant offered the nine following prayers:

1. If the jury find that the deceased was on the north track of the defendant's road, at Weverton, spoken of by the witnesses, and was there run over and killed by an engine and freight train, improperly and negligently permitted to be run on the said track by the defendant's employés, but further find that the deceased left a place of absolute safety, and attempted to cross the said track, and that before, or whilst in the act of going on said track, the deceased's attention was distinctly called to the fact of the approaching engine and train, and that he knew it was so approaching, and that notwithstanding the fact of his attention being so called, and of his knowledge that the engine and train were approaching, suddenly, and when the engine was so close to him, as to render it impossible for those in charge of the train, by the exertion of the utmost care and caution, to have avoided the peril to which the deceased was exposed, when he attempted to cross the track, and in so doing, was struck and killed, then the verdict must be for the defendant.

2. If the jury find from the evidence, that the deceased was on the defendant's platform, at Weverton Station, with a ticket entitling him to be carried thence to Frederick City, on a passenger train, which was then standing on the defendant's south track at that place, that in order to reach the said passenger train from the station platform, it was necessary to cross another track on the north, and running parallel with that on which said passenger train was standing; and further find, that the defendant's employés, then and there, negligently permitted an engine and freight train to be run on said north track, between the station platform and said passenger train, and deceased attempted to cross said north track to reach his train, and in so doing, was struck and killed by the said freight engine and train, yet the plaintiffs cannot recover in this case, if the jury further find that the deceased voluntarily left the said platform, and attempted to cross the said track, with knowledge on his part, (derived either from seeing the engine and train approaching, or from admonitions and warnings of others of its approach,) that it was dangerous, then and there, to attempt to cross said track, or to be upon it for any purpose, unless the jury further find, that the employés in charge of the train saw, or by exercise of proper care and prudence could have seen the peril to which deceased was exposed, in time to have avoided the injury.

3. If the jury find from the evidence, that the deceased was on the north track of the defendant's railroad, at Weverton, as spoken of by the witnesses, and was run down and killed by a freight engine and train, improperly and negligently allowed to be run on said track by defendant's employés; but further find, that the deceased left a place of absolute safety, and voluntarily went on the said north track, in order to board a passenger train then standing on a track south and running parallel with said north track; and further find, from all the facts and cir-

cumstances of the case in evidence before them, that by the exercise of ordinary care, caution and prudence on his part, the deceased could have known of the danger and peril of attempting to cross the said track, or of being on it for any purpose at that time ; and that he did not exercise such care, caution and prudence, but went on to the said track and was killed as aforesaid, then the plaintiffs cannot recover, unless the jury further find that the employés in charge of the train saw, or by exercising ordinary care, caution, vigilance and prudence, could have seen the peril to which the deceased had so exposed himself, in time to have avoided the injury to the deceased.

4. If the jury find that the deceased was on the north track of the defendant's road, at Weverton Station, for the purpose of boarding a passenger train, standing on a track running south of and parallel therewith, and on which he was entitled to be carried as a passenger, and that so being on the said north track, he was run over and killed by an engine and freight train, improperly and negligently allowed to be run on said track; yet the plaintiffs cannot recover, if the jury further find that the deceased either saw or knew of the approach of the said freight engine and train, and voluntarily left a place of absolute safety so suddenly as not to afford an opportunity for those in charge of the freight train, by the exercise of care and prudence, on their part, to see and avoid the consequences of the peril to which the deceased had so exposed himself, got on the track and attempted to cross said track, in front of the engine and train, so improperly and negligently running upon it.

5. If the deceased was on the north track of defendant's road, at Weverton Station, crossing it in order to board a passenger train standing on a track south of it, and running parallel with it, and whilst so crossing was run down and killed by a freight engine and train, which the defendant's employés improperly and negligently

permitted to be run there; but further find from all the evidence before them, that before the deceased got on to said north track, and whilst he was in a place of absolute safety, he was distinctly warned not to go upon said north track, or that he was told that a train was approaching there, and the deceased, in disregard of such warning, left his place of safety, and suddenly and when the engine was so close upon him, as to render it impossible for the parties in charge of the train, to have avoided the peril to which the deceased had exposed himself, and went on said track, and was killed as aforesaid, then the plaintiffs cannot recover, even though the jury may believe from the evidence, that deceased did not actually see the engine and train approaching.

6. If the jury find that the deceased had a ticket entitling him to be carried on defendant's passenger train from Weverton to Frederick, and that in order to reach the train in which he was entitled to be carried, it was necessary for him to cross the north track of defendant's road, running parallel with that on which the said train was standing, and that the deceased attempted to cross the said north track for this purpose, and in so doing, was struck, run over, and killed by an engine and freight train, improperly and negligently permitted by defendant's employés to be run on the said track at that time and place; but further find from all the evidence in this case, that the deceased voluntarily left a place of absolute safety, and with knowledge of the fact, that the said freight engine and train were approaching so suddenly, and as not to afford an opportunity for those in charge of the train, by the exercise of care and prudence on their part, to see and avoid the peril to which the deceased was exposed, got on the said track and attempted to cross the track, and in so doing, was struck and killed as aforesaid, then the plaintiff cannot recover. .

7. That a father is under no legal obligation to support and maintain his children, who are above the age of

twenty-one years, and if, under the instructions of the Court, they shall find for the plaintiffs, and shall also find from the evidence that Willimina and Henrietta Hauer, two of said equitable plaintiffs, at the time of their father's death, were above the age of twenty-one years, then in estimating the damages sustained by the equitable plaintiffs by the death of their father, Luther M. Hauer, the jury must exclude from their consideration any claim for damages on the part of said adult plaintiffs, unless the jury shall further find that said adult plaintiffs were dependent upon their said father for support and maintenance by reason of some want of ability to support and maintain themselves.

8. That in assessing the damages in this action, if the jury shall find for the plaintiffs, they are not at liberty and cannot consider the sufferings of the deceased, nor the anguish and distress caused his children by his death, but in making up their verdict, should allow for all losses occasioned by his death, and confine themselves to such compensation to the minor equitable plaintiffs as would supply to each one of them the same results as would have followed from the labor and earnings of said deceased, as testified to by the witnesses, had he lived up to the time of their respective majorities.

9. That if the jury shall find for the plaintiffs, in assessing the damages in this action, they are not at liberty to, and cannot, consider the sufferings of the deceased, nor the anguish and distress caused his children by his death, but, in making up their verdict, should allow for all losses occasioned by his death, and confine themselves to such compensation to the equitable plaintiffs as would supply to each one of them the same results as would have followed from the labor and earnings of said deceased, as testified to by the witnesses, had he lived for such time as, from his age, he had a probability of living.

The Court (LYNCH, J.) granted all the prayers of the plaintiff, the sixth of said prayers being granted in con-

nection with the seventh and ninth prayers of the defendant, and granted the first, second, fourth, fifth, seventh, and ninth prayers of the defendant, the second being conceded, and rejected its third, sixth, and eighth.

The defendant excepted, and, the verdict and judgment being rendered against it, appealed.

The cause was argued before MILLER, STONE, ALVEY, ROBINSON, and IRVING, J.

*W. Irvine Cross*, and *Henry E. Wootton*, for the appellants.

*James McSherry*, and *Henry Kyd Douglass*, for the appellee.

ALVEY, J., delivered the opinion of the Court.

Luther Hauer, the father of the equitable plaintiffs in this case, was killed by a locomotive engine and a train of cars on the road of the defendant, on the 4th of June, 1880; and this action was brought under Article 65 of the Code, to recover for the alleged negligence of the defendant in causing the death.

At the trial there were three bills of exception taken by the defendant; two in respect to rulings upon the admissibility of evidence, and one in respect to the rulings upon the prayers offered by the respective parties.

1. In the first bill of exception the question intended to be raised was as to the admissibility of evidence taken under a commission. The ground of the objection to the admissibility of the evidence, as we gather it from the argument of counsel, was the supposed want of opportunity by the defendant to exhibit cross-interrogatories to the witness examined under the commission. But it is the settled practice in this State, that, in the execution of foreign commissions to take evidence, no notice to the par-

ties of the time and place of the execution of the commission is necessary. All the notice required to the opposite party is that of the interrogatories filed to be sent out with the commission. *Calvert vs. Coxe,* 1 *Gill,* 95, 120; *Parker vs. Sedwick,* 4 *Gill,* 318. Actual or constructive notice, however, of the filing of the interrogatories should be given to the opposite party in time to enable him to exhibit cross-interrogatories before the commission is sent out. But in this case it appears that the interrogatories in chief were filed before the commission was issued, and were served on the attorney of the defendant, and that the attorney wrote at the foot of the interrogatories thus served upon him, "Let commission issue as proposed." This must be taken as a waiver of all further service of the interrogatories, and of all further delay of the commission. The objection, therefore, to the admissibility of the evidence taken under the commission was properly overruled.

2. The question to the witness, and the answer thereto, excepted to by the defendant in the second bill of exception, would seem to be quite immaterial, and it is not perceived how the answer of the witness could have prejudiced the defendant. The jury were fully and explicitly instructed upon the subject of the measure of damages, and the principles upon which the damages were to be assessed; and we are not to assume that those instructions were disregarded by the jury. The statement of the witness as to the residence of the children of the deceased, and with whom they were living at the time of the trial, while not material facts to any question to be passed upon by the jury, afford no sufficient ground for the reversal of the judgment.

3. The third bill of exception embraces the rulings of the Court upon the prayers offered by plaintiff and defendant for instructions to the jury, upon the whole evidence in the case.

It appears from the proof in the record that Hauer, the deceased, on the morning of the accident, had procured a ticket and taken passage over the road of the defendant from Hagerstown to Frederick. Coming from Hagerstown on the Washington County Branch of the defendant's road, on reaching Weverton, a station on the main line of the road, the deceased, with the other passengers, was required to change cars; and it was necessary, upon arriving at that station, to wait there for an east-bound train which would take him on to Frederick. The main line of road has two principal tracks at this station; and as shown by the plat, there is a large platform on the north, separating the tracks of the main line from the tracks of the Washington County Branch road. There was also a smaller platform between the tracks of the main line, used by passengers in boarding the east-bound trains coming down on the south-side track. The train that the deceased intended to take came down on the last mentioned track, and had stopped to let off and take up the passengers, when the deceased, in attempting to cross the north main track, from the larger to the smaller platform, in order to get on the train that he was to take, was struck by a west-bound freight train, and was mortally injured.

It is shown in proof that there was a red target signal at this station, which it was the duty of the defendant's telegraph operator to put down when passenger trains were due there, or were stopping to let off or take on passengers. This signal, according to the proof, was down, and it was an imperative warning to all freight trains, bound either east or west, to stop and not to approach the station while the passenger trains remained there. This signal was entirely unheeded upon the occasion of the accident in question. The freight train, without signal of its approach, came up to and passed the station, while the people were in the act of passing from one platform to the

Balt. & Ohio R. R. Co. *vs.* State, use of Hauer, *et al.*

other, in order to get on the east-bound passenger train; and it was in consequence of this non-observance of the rules of the road, and the signal displayed, by those in charge of the freight train, that the fatal collision occurred.

It also appears from the evidence that while the deceased was in the act of passing from the one platform to the other, and crossing the north track of the main line, there was an outcry and a general warning given to the passengers to get off the track and out of the way of the approaching train. But whether the deceased heard or understood the warning in time to make his escape, or whether he saw the train approaching, and ventured to cross the track in disregard of the danger, are questions left in doubt, and in regard to which there is some conflict among the witnesses as to what did really occur. It is clear, if the deceased had anticipated the passing of the train, and been on the look-out for it, he could have seen it in ample time to have avoided the accident. The evidence on both sides establishes this beyond question. But that there was gross negligence on the part of the employés of the defendant in running the freight train up to and by the station, under the circumstances of the case, is clear beyond doubt, and that fact is not disputed by the defendant. It is, however, insisted for the defendant that the deceased might have avoided the consequences of the negligence in running the freight train by the station, by the use of ordinary care.

In all cases of this kind there are two questions involved. First, whether there be negligence on the part of the defendant which produced the injury complained of? and, secondly, whether the party injured might, by the exercise of ordinary care on his part, under the circumstances of the case, have avoided the accident? In this case, as we have seen, the first of these questions is made clear upon the evidence, and is not open to contro-

versy; and the case mainly depends upon the manner in which the second of these questions was submitted to the finding of the jury, by the instructions that were given by the Court below.

There can, of course, be no doubt of the general proposition, in a case like the present, that although the agents and employés of the railroad company may be guilty of gross negligence in the manner of operating the road; yet if the passenger, in passing from one train to another, recklessly and without care, fails to pay heed to timely warnings, and attempts to cross a track in front of an approaching train that he does in fact see approaching, or which he knows to be approaching in dangerous proximity, and is killed or injured, such accident is attributable, not to the negligence of the railroad company, but to the reckless negligence of the injured party himself. But while such is the general principle, in each case the special facts and circumstances must be considered, and their bearing upon the propriety of the conduct of the party injured, except where the facts are clear and undisputed, must be submitted to the jury for their consideration.

The want of ordinary care on the part of the party injured is matter of defence, and the *onus* of proof of the fact is upon the defendant. And in considering the facts, the question of ordinary care on the part of the party injured is not to be determined in an abstract way, but relatively, as it may be connected with and dependent upon the duty and obligation of the defendant. It is settled, by all respectable authority, that while the carriers of passengers are not insurers of absolute safety, yet they are bound to exercise reasonable care, according to the nature of their contract; and as their employment involves the safety of the lives and limbs of their passengers, the law requires the highest degree of care which is consistent with the nature of their undertaking. *Warren vs. Fitchburg R. Co.,* 8 *Allen,* 227; *Balt. & Oh. R. Co. vs. Worthington,* 21 *Md.,*

275 ; *State, use of Coughlan vs. Balt. & Oh. R. Co.,* 24 *Md.,* 84, 102; *Bannon vs. Balt. & Oh. R. Co.,* 24 *Md.,* 108, 121.

Here the deceased was a passenger, with a ticket that entitled him to be carried safely from Hagerstown to Frederick. By the regular route and mode of carriage it was necessary for him to change cars at the Weverton Station, and to cross over the intervening track of the defendant from one train to another. In making this transit he continues to be a passenger of the defendant, and entitled to the protection that the highest degree of care on the part of the defendant could afford, under the circumstances. In leaving the train from Hagerstown, at the station, and in crossing over the intervening track from one platform to the other, in order to take the east bound train, the deceased might well assume that the defendant would not expose him to any danger which, by the exercise of due care, could be avoided. And though the deceased himself was required to exercise reasonable care, yet we may suppose that his watchfulness was naturally lessened by his reliance upon the faithful observance by the employés of the defendant of such precautionary rules and regulations as would secure to passengers a safe transfer from one train to the other. And, except in the presence of immediate apparent danger, he was authorised to act upon such reliance. For the general rule that applies in ordinary cases of parties crossing railroad tracks, that they should stop, look, and listen, before making the venture, does not apply in a case like the present. In such case as this, the rule is, as established by a number of well considered cases, that the passenger of the railroad is justified in assuming that the company has, in the exercise of due care, so regulated its trains that the road will be free from interruption or obstruction when passenger trains stop at a depot or station to receive and deliver passengers. Upon any other principle the lives of passengers might be most dangerously exposed, in the hurry, noise and confusion

that generally attend the transfer of passengers at a connecting station. *Warren vs. Fitchburg R. Co., supra; Gaynor vs. Old Colony & Newport R. Co.,* 100 *Mass.,* 208, 215; *Terry vs. Jewett,* 78 *N. Y.,* 338; *Brassell vs. N. Y. Cen. & H. River R. Co.,* 84 *N. Y.,* 241; *Klein vs. Jewett,* 26 *N. J. Eq.,* 474; affirmed in 27 *Id.,* 550.

Now, applying the principle just stated to the several prayers offered by the plaintiff and defendant, it follows, as to the first instruction granted at the instance of the plaintiff, that it was rightly granted; and we do not understand that it is questioned by the defendant. But the second instruction granted for the plaintiff is objected to; and if that instruction stood alone, and without connection with or dependence upon the preceding instruction, there might be ground for the objection taken to it. It is, however, by express terms, made dependent upon the finding of all the facts set out in the first instruction, and the conclusion authorised by it could only be arrived at by the finding of all those facts. By the first instruction the jury were required to find "that the killing of the deceased resulted directly from the want of the exercise of ordinary care and prudence on the part of the agents of the defendant, and not from the want of ordinary care and prudence of the deceased, contributing to the accident." If those facts were found, notwithstanding there may have been a want of ordinary care on the part of the deceased in attempting to cross the railroad track, under the circumstances, the right to recover was not necessarily precluded. It is not every fault or want of ordinary care on the part of the party injured, in connection with the happening of the accident, that will defeat the right to recover. The books abound with cases to the contrary. This second instruction, with its dependence upon the preceding instruction, is identical with one granted in the case of *Trainor,* 33 *Md.,* 544, 553, and which this Court held to be correct. Besides, by the first, second, fourth

and fifth instructions, granted at the instance of the defendant, the jury were fully and explicitly instructed in reference to the occurrence of the accident, and as favorably as the defendant could possibly ask. Each of those instructions concluded against the right of the plaintiff to recover, and they presented the case fully and explicitly in all its aspects. And those instructions completely removed all possible room for any supposed misleading tendency or doubtful interpretation of the plaintiff's second instruction, in reference to the degree of care required of the deceased.

The third, fourth, and fifth instructions, granted at the instance of the plaintiff, would appear to be free of error, and there has been no question made on them in this Court. But the defendant earnestly insists that there was error committed in the rejection of its third prayer. In this contention, however, we do not agree.

That prayer was properly refused for two reasons. First, because, by the prayers granted at the instance of the defendant, the jury were fully instructed as to all the conditions of the case upon the finding of which the defendant could be exonerated from liability,—all of the prayers conceding the negligence of the defendant; and, secondly, because the prayer, if it had been granted, would have been misleading to the jury. It entirely ignored the fact that the deceased was a passenger, and was entitled to the protection of a passenger in passing over the intervening track to board the train that was to take him on his way to Frederick. It required of the deceased the exercise of care and caution to ascertain whether there was danger of a passing train, before attempting to cross the track to board the train that he was required to take ; whereas he was, unless he saw or knew of the approaching train, justified in acting upon the implied assurance that no train would be allowed to pass the station to obstruct the trans-

fer of passengers from one train to another. There was no error, therefore, in rejecting that prayer.

There has been no serious question made upon the rejection of the defendant's sixth prayer. This we may suppose was for the obvious reason, that the defendant obtained the full benefit of everything contained in that prayer in the first, fourth, and fifth prayers, upon the same subject. The Court clearly committed no error in refusing to duplicate its instructions, merely because of some slight change of phraseology.

4. The remaining questions relate to the damages, and the principles upon which they are assessed and apportioned. It is insisted by the defendant that the adult children of the deceased are not entitled to any compensation, under the statute, on account of the death of their father. And whether this be so or not depends upon the proper construction of the first and second sections of Article 65 of the Code.

Those sections of the Code are almost a literal transcript of the English Statute, 9 & 10 *Vict. ch.* 93, known as Lord CAMPBELL's Act; the English statute requiring the action to be brought by the executor or administrator of the deceased, for the use of the parties mentioned, while our statute requires the action to be brought by and in the name of the State, for the use of such parties. Under both statutes alike the action is to be for the benefit of the wife, husband, parent, and child of the deceased; and in every such action, the jury may give such damages as they may think proportioned to the injury resulting from such death to the parties for whose benefit suit is brought, and such damages are required to be divided among the parties entitled by the verdict of the jury. The statute makes no reference to the age or condition of the parties, but it simply provides for damages "*proportioned to the injury resulting from such death to the parties*" for whom suit may be brought. In the English Courts the construction

of this statute has been the subject of careful consideration in several cases; and those Courts have uniformly held that the damages in such cases must be confined to pecuniary loss, and the jury should not be allowed to take into consideration the pain and suffering of the deceased, or the mental suffering of the parties for whose use the action is brought. But in those cases it is distinctly held that "legal liability alone is not the test of injury, in respect of which damages may be recovered under the statute; but that the reasonable expectation of pecuniary advantage by the relative remaining alive may be taken into account by the jury, and damages given in respect of that expectation, if it be disappointed and the probable pecuniary loss thereby occasioned." *Dalton vs. S. E. Ry. Co.*, 4 *C. B.*, (*N. S.*,) 296; *Franklin vs. S. E. Ry. Co.*, 3 *H. & N.*, 211; *Pym vs. G. N. Ry. Co.*, 2 *B. & S.*, 759. In other words, the damages to be allowed for the injury sustained should be a compensation to the family of the deceased, or those entitled, equivalent to the pecuniary benefits which they might have reasonably expected from the continuance of his life. *Bradburn vs. Great W. Ry. Co., L. R.*, 10 *Ex.*, 1. Thus the children may recover for the loss of the education, comforts, and position in society, which they would have enjoyed if their father had lived and retained the income which died with him, and they had continued to form part of his family. *Pym vs. Great North. Ry. Co.*, 2 *B. & S.*, 759; affirmed, 4 *B. & S.*, 396; *Mayne on Damages, sec.* 707. See, also, the case of *Railroad Co. vs. Barrow*, 5 *Wall.*, 90, where, upon a statute of a similar import to that of our own, it was held, that the right to recover did not depend upon any *legal* claim upon the deceased for support.

In the case of the *State, use of Coughlan vs. Balto. & Oh. R. Co.*, 24 *Md.*, 84, 105, the action was for the benefit of a widowed mother for the death of her minor son. In that case it was said by the Court, that "the law en-

titles the mother to the services of her child during his minority only (the father being dead); beyond this, the chances of survivorship, his ability or willingness to support her, are matters of conjecture too vague to enter into an estimate of damages merely compensatory." But this is quite a different case. Here the action is for the benefit of the children for the loss of the father; and it falls within the express ruling of the English cases upon the terms of the statute. And it is said in 24 *Md.*, 106, that we can have no better guide in the construction of this statute of ours than the decisions of the English Courts upon the similar English statute. Both statutes are founded in the same reason and policy, and being expressed in similar terms, there ought in reason to be no diversity in construction.

In view of the principles of construction just stated, the sixth and seventh prayers of the plaintiff, granted as they were in connection with the seventh and ninth prayers of the defendant, the four instructions being taken together, instructed the jury, as to the measure and principle of estimating the damages, in a manner unobjectionable. By the seventh instruction, granted at the instance of the defendant, the jury were directed to exclude from their consideration all claims for damages by the adult children, unless they should find that such adult children "were dependent upon their father for support and maintenance, by reason of some want of ability to support and maintain themselves." This was certainly as restrictive as the defendant could ask; and having obtained such an instruction, the eighth prayer could not have been consistently granted. See *Deford vs. State, use of Keyser*, 30 *Md.*, 179, 208; *P., W. & B. R. Co. vs. State, use of Bitzer*, 58 *Md.*, 374, 399.

It is urged that the amount of the damages awarded by the verdict was largely in excess of any pecuniary injury sustained, and that the apportionment was not warranted

by the proof. But however that may be, it is not a matter with which this Court can deal. There was no question made in the Court below as to the legal insufficiency of the evidence to show pecuniary loss to any of the parties; and the only remedy for excessive damages was with that Court, on motion for a new trial.

The judgment must be affirmed.

*Judgment affirmed.*

(Decided 21st June, 1883.)

MILLER and ROBINSON, J., dissented on the question of the measure of damages, and were of opinion the defendant's eighth prayer should have been granted.