## The Philadelphia, Wilmington and Baltimore Railroad Company *vs.* Charles H. Anderson.

*Railroad Company—Carriers—Injury to Passengers—Negligence—Burden of Proof—Contributory negligence—Question for the Jury.*

Carriers of passengers are required to use the utmost degree of care, skill and diligence in everything that concerns their safety; nor are their duties limited to the mere transportation of them. They are bound to provide safe and convenient modes of access to their trains and of departure from them.

But the degree of care which is exacted of such carriers is subject to a reasonable limitation. It is not the utmost and highest, absolutely, but the highest which is consistent with the nature of their business, and there must be a due regard to its necessary requirements.

Where a passenger is injured during the time when he is such, and therefore under the protection of the railroad company, and the injury is inflicted by a train of cars, running on its track, and under the control and management of its servants, the company ought to be required to show that it used on the occasion the degree of care which the law imposes upon it. And in such case the occurrence of the accident is *prima facie* evidence of negligence on the part of the company, throwing upon it the *onus* of rebutting the presumption by proving there was no negligence.

In an action by a passenger against a railroad company, it was in evidence that as the train of the defendant, on which the plaintiff was a passenger, approached a city station it slowed up; the name of the station was then called out, and the train stopped at the outer end of the station platform. The plaintiff started to leave the car in which he was riding, but when he reached the car platform the train had commenced to move on slowly. Nevertheless, he stepped from the car, and immediately on reaching the ground was struck by a train coming from the opposite direction. If he had looked ahead before he left the

step of the platform, he would have seen the light of the advancing train, and could have avoided the danger. HELD:

That it could not be ruled as a matter of law that the plaintiff was guilty of contributory negligence because he did not look out for the approaching train before he left the car; but the question was one to be determined by the jury.

APPEAL from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court.

*Exception.*—At the trial the plaintiff offered the five following prayers:

1. If the jury believe the defendant was the owner of the railroad mentioned in the declaration, and sold plaintiff a ticket, and received and accepted him as a passenger to be carried as therein stated, then defendant was bound to exercise on said trip for plaintiff's safety, the highest degree of care and skill which was consistent with the nature of its undertaking.

2. If the jury believe the facts stated in plaintiff's first prayer, and further believe plaintiff was injured by reason of the absence of such care and skill as it is required by plaintiff's first prayer to exercise in performing its said undertaking, then he is entitled to recover in this action, unless the jury find that by his own negligence he directly contributed to the injury he received.

3. In order to defeat a recovery on the ground of contributory negligence on plaintiff's part, the defendant must satisfy the jury by preponderating evidence of two facts: First, that the plaintiff was negligent; and secondly, that such negligence directly contributed to the injury.

4. If the jury shall find a verdict for the plaintiff, then, in estimating the damages, they are to consider his health and condition before the injury complained of as

compared with his present condition in consequence of said injury, and whether the same is in its nature permanent, and how far, if at all, it is calculated to disable him from engaging in employments for which, in the absence of such injury, he would have been qualified, and also the physical and mental sufferings, if any, to which he was subjected by reason of such injury, and to allow him such damages as in the opinion of the jury will be a fair and just compensation for the injury he has sustained.

5. The degree of care required of a passenger is not the highest degree of care, but only the ordinary care which ordinarily prudent people are accustomed to exercise.

And the defendant offered the eight prayers following:

1. That there is no evidence in this case legally sufficient to entitle the plaintiff to recover.

2. That there is no evidence in this case legally sufficient to show that the injury complained of by the plaintiff was caused solely by the negligence of the defendant, and the verdict of the jury, therefore, must be for the defendant.

3. The plaintiff is not entitled to recover in this action, because the evidence which he has produced shows that the negligence and want of due care on the part of the plaintiff directly contributed to the injury complained of by the plaintiff, and the verdict of the jury, therefore, must be for the defendant.

4. If the jury find from the evidence in this case that the accident complained of was in any degree owing to the want of due care and caution on the part of Anderson, the plaintiff, directly contributing to said accident, then their verdict must be for the defendant.

5. Notwithstanding the jury shall believe from the evidence that the defendant was guilty of negligence, yet if they shall further believe from the evidence that

the plaintiff, Anderson, was also guilty of negligence, and that the accident was directly caused partly by the defendant's negligence and partly by the plaintiff's negligence, then the verdict of the jury must be for the defendant, without regard to whose negligence was the greater.

6. Notwithstanding the jury shall believe from the evidence that the officers of the train upon which plaintiff was a passenger were negligent in the discharge of their duty, and that this negligence directly contributed to produce the injury complained of by the plaintiff, yet, if the jury shall further believe from the evidence, that the plaintiff saw, or by the exercise of reasonable care would have seen that by getting out of the train at the time and in the manner testified to by himself, he was encountering danger or peril, and that said danger or peril caused the accident complained of, then the plaintiff is not entitled to recover, and the verdict of the jury must be for the defendant.

7. If the jury shall find from the evidence that there was negligence on the part of the defendant's agents in the management of the train which caused the accident complained of, or on which he was riding, but shall further find that there was a want of prudence and proper care on the part of Mr. Anderson in attempting to get off the cars at the place, or at the time when he did, and that such want of prudence and proper care on his part directly contributed to the accident, then the verdict of the jury must be for the defendant.

8. That although the burden of proving that the plaintiff contributed to the injury complained of is upon the defendant, yet if the jury shall believe from all the evidence in the case, whether such evidence was offered by plaintiff or defendant, that there is a preponderance of testimony that the plaintiff was guilty of any negligence which contributed directly to produce the injury

complained of, then the burden of proof is satisfied and the verdict of the jury must be for the defendant.

The Court (STUMP, J.,) granted all the prayers of the plaintiff; refused the first, second and third prayers of the defendant, and granted its other prayers. The defendant excepted, and the verdict and judgment being against it, appealed.

The cause was argued before ALVEY, C. J., ROBINSON, BRYAN, FOWLER, MCSHERRY, and BRISCOE, J.

*William J. Jones,* for the appellant.

*Albert Constable,* for the appellee.

BRYAN, J., delivered the opinion of the Court.

Anderson recovered a judgment against the appellant, who was defendant below, for injuries received whilst he was a passenger on its railroad. The Circuit Court left it to the jury to find on the evidence whether the injuries were caused by the negligence of the defendant; and whether the plaintiff's own negligence contributed to produce them. The defendant contended that the case ought not to have been submitted to the jury; that there was no evidence of negligence on its part; and that the Court ought to have ruled that the negligence of the plaintiff directly contributed to the injury.

The plaintiff testified at the trial that he was a passenger in the defendant's cars, and that he left Philadelphia on the night of the eleventh of January, 1889, having a ticket which entitled him to passage to the City of Chester. That when they reached this place, "Chester" was called out, and the train was stopped; that he supposed that the train was at the Chester depot; that he got up and started to go out, and when he reached the platform the train started again; that he thought that the train

Phila., Wilm. & Balto. R. R. Co. *vs.* Anderson.

was then leaving Chester, and as he did not wish to be carried to the next station, he stepped off, and just then the Philadelphia and Washington Express came along, and knocked him down, broke his leg, and crushed his foot. The train in which the plaintiff was travelling was going west or south, and the express train which injured him was going east or north. It appears that Welsh street is at the east end of the station platform, and Market street is at the west end of it. The plaintiff testified that the train stopped at Welsh street; but that he thought at the time it was at Market street, which was at the other end of the platform; and that he stepped off on the left hand side of the train; that at Market street, on the right side of the train, there are safety gates; that on the east side of the street they are four feet nine inches from the cars, and on the west side about twenty-four inches from them; that the place where he stepped off is between the east and west bound tracks, and is called the six foot way, but he had never measured the space, and did not know its exact width; that there are two platforms at Chester Station, running the whole distance from Welsh to Market streets, one of them on each side of the railroad tracks. He further testified that when the train slowed up, and the name of "Chester" was called out, and the train stopped, he understood that he was at the station, and that the passengers for that station were to get off; that he was in a hurry to get off as the train had started, and he thought that unless he got off at once he would be carried on to the next station; that no one called out or gave notice that the train had not reached the station, or told the passengers to keep their seats, and that he heard no warning of any kind; that the train was moving very slowly, and he alighted safely and securely on his feet; that, just as he got his foot on the ground, he saw the headlight of a locomotive coming east; that he had barely time to

Phila., Wilm. & Balto. R. R. Co. *vs.* Anderson.

turn round when he was struck; he was knocked down, but he was not on the track. On cross-examination he testified that he did not look to see where he was, because he was so positive that he was at Chester depot or Market street crossing; that if he had looked from the right side of the car forward, he supposed that he would have seen the lights there, (that is the station lights); that he supposed that he was getting off very near the middle of Market street ; that he supposed that he was safe in getting off there; that he had no chance to look; that he knew all about the location of the station. He also testified that passengers get on or off the trains at Chester indifferently, on either side of it,—if they live south of the station they generally get off on the left hand side; if they live north of the station they generally get off on the right hand side,—except ladies, who take the right hand side, because the platform comes up higher on that side, and the step is shorter; that fully one-third of the passengers arriving at Chester from the East get off on the left hand side; that he never knew or understood that there was any rule of the company against it, and never heard of any notice forbidding it, or of any protest from any agent of the company against it; that he knew that there was a rule of the defendant which forbade trains to pass a station when a train was receiving or discharging passengers. There was other evidence corroborating the plaintiff's statements about the habit of passengers in getting on or off the train on either side. One of the witnesses says he never knew of any rule of the defendant which forbade it, and never saw or heard of any notice to that effect. Another witness, a policeman, testified that he had acted as officer for the defendant at the Chester depot when their officer was absent; that his practice was to help passengers on and off the trains on either side, and such was the practice of the regular railroad officer, and that there was no

526          MARYLAND REPORTS.

Phila., Wilm. & Balto. R. R. Co. *vs.* Anderson.

rule of defendant, which he ever knew or heard of, that was against leaving the cars on the side away from the platform. Rule 112 of the defendant was offered in evidence, as follows : " A train approaching a station where a passenger train is receiving or discharging passengers must be stopped before reaching the passenger train."

We have not stated all the evidence; nor have we stated it in the order in which it was given at the trial. But the portions which we have quoted will suffice to illustrate the judgment which we have formed on the questions presented by this record. Carriers of passengers have in their charge the lives and safety of the persons whom they undertake to transport, and are subjected to a responsibility proportioned to the gravity of the trust reposed in them. They are bound to use the utmost degree of care, skill and diligence in everything that concerns the safety of passengers; nor are their duties limited to the mere transportation of them. They are bound to provide safe and convenient modes of access to their trains, and of departure from them. In *Gaynor vs. Old Colony and Newport Railroad Company*, 100 *Massachusetts*, 208, it was said: " The plaintiff was a passenger, and while that relation existed the defendants were bound to exercise towards him the utmost care and diligence in providing against those injuries which can be avoided by human foresight. He was entitled to this protection, so long as he conformed to the reasonable regulations of the company, not only while in the cars, but while upon the premises of the defendants; and this requires of the defendants due regard for the safety of passengers, as well in the location, construction and arrangement of their station buildings, platforms and means of egress, as in their previous transportation." *Vide* also *Balto. & Ohio R. R. Co. vs. State, use of Hauer, et al.*, 60 *Md.*, 462 *and* 463. But the degree of care which

is exacted of these carriers is subject to a reasonable
limitation; it is not the utmost and highest, absolutely,
but the highest which is consistent with the nature
of their business; and there must be a due regard to
its necessary requirements. The plaintiff was injured
whilst he was a passenger; that is, during the time
when he was under the defendant's protection; and
the injury was inflicted by a train of cars running on
the defendant's track, and under the control and man-
agement of its servants. It seems to us that under
these circumstances the defendant ought to be required
to show that it used on the occasion the degree of care
which the law imposed upon it. And that we may
apply to this case the language of the late Chief Justice
in *Balto. & Ohio Railroad Co. vs. Worthington,* 21 *Md.,*
283: "The case of *Stokes vs. Saltonstall,* 13 *Peters,*
181, and *Stockton vs. Frey,* 4 *Gill,* 414, conclusively estab-
lish the law that in such case the occurrence of the acci-
dent is *prima facie* evidence of negligence on the part of
the defendants, throwing upon them the *onus* of rebutting
the presumption by proving there was no negligence.
Of course, that can be done only by proving the facts
and circumstances, explaining the cause of the accident,
showing it to be such as could not have been guarded
against by the utmost care and diligence; or, in other
words, by proving in the language of Chief Justice
SHAW, the 'most exact care and diligence, not only in
the management of the trains and cars, but also in the
structure and care of the track, and in all the subsidiary
arrangements necessary to the safety of the passengers.'"
But the question still remains whether the plaintiff by
his own negligence, contributed to the production of the
injury. Before we express an opinion on this point, it
is fit to take into view the incidents of the entire trans-
action. As the train approached the City of Chester, it
slowed up; the name "Chester" was then called out, and
the train stopped at the eastern end of the station plat-

form; the plaintiff started to leave the car in which he was travelling, but when he reached the car-platform, the train had commenced to move on slowly; nevertheless, he stepped from the car, and was immediately struck by a train coming from the opposite direction. If he had looked ahead before he left the step of the platform, he would have seen the light of the advancing train, and could have avoided the danger. It is difficult to see why after the speed was slackened, the name of the station was called out and the train was stopped, unless it was intended that the passengers for that place should alight. The passenger who should draw this conclusion cannot be considered as forming an opinion which no reasonable man could entertain. The evidence does not inform us why, the name was called out, and why the train was stopped, unless this was the purpose; nor does it show why, after a momentary pause, it afterwards slowly proceeded. If the discovery of the approaching train caused any change of purpose on the part of the conductor, it would have been reasonable to communicate this change to passengers whose safety might be affected by it. If any reason had been made known to the plaintiff for the stopping of the train, and the announcement of the name of the station, we would have had more light on the nature and character of his act. But, without some aid of this kind, we are unable to say that the inference of negligence on his part is certain and incontrovertible, and consequently we cannot declare it as a question of law. *Cumberland Valley Railroad Co. vs. Maugans,* 61 *Md.,* 53. He made his exit from the car in safety, but was immediately confronted by a great danger. If he had looked forward, he might have seen and avoided it. But here we must bear in mind the circumstances attending his exit from the cars. He was getting off at a place which, with the knowledge and permission of the defendant, was habitually used for this purpose; and he knew, .

APRIL TERM, 1890. 529

Phila., Wilm. & Balto. R. R. Co. *vs.* Anderson.

moreover, that it was the defendant's duty to use all possible care to make this place safe for him. And he knew that by a special rule, it had declared that when his train was discharging passengers, an approaching train must be stopped, and not be allowed to reach it. Now assuming that he supposed that he was to be discharged as a passenger at that place, he would necessarily and unavoidably infer that he would be safe, if the Railroad Company observed this rule. Undoubtedly he had a right to assume that this rule would be enforced, and relying upon the assurance guaranteed by the rule, he was dispensed from the necessity of using the degree of care ordinarily required of persons who go on or near railroad tracks. This was decided in *Baltimore and Ohio Railroad Co. vs. State, use of Hauer, et al.*, 60 *Md.*, 449. In that case a passenger was killed at a railroad station, while attempting to cross a track on his way from one train to another. The question was on the degree of care which he was bound to use. The Circuit Court refused an instruction prayed by the Railroad Company to the effect that if the deceased left a place of absolute safety and voluntarily went on the track in order to board a passenger train, and that if by the exercise of ordinary care, caution and prudence on his part, he could have known of the danger of attempting to cross the track, or of being on it for any purpose at that time; and that if he did not exercise such care, caution and prudence then he was guilty of contributory negligence. This Court decided that the prayer was properly refused. In a very clear and well reasoned opinion, the present Chief Justice pointed out the distinction between the obligations of passengers in this regard and other persons, not sustaining this relation to the carrier. He says: "In leaving the train from Hagerstown, at the station, and in crossing over the intervening track from one platform to the other, in order to take the east bound train, the deceased

might well assume that the defendant would not expose him to any danger which, by the exercise of due care, could be avoided. And though the deceased himself was required to exercise reasonable care, yet we may suppose that his watchfulness was naturally lessened by his reliance upon the faithful observance by the employés of the defendant of such precautionary rules and regulations, as would secure to passengers a safe transfer from one train to the other. And, except in the presence of immediate apparent danger, he was authorized to act upon such reliance. For the general rule that applies in ordinary cases of parties crossing railroad tracks, that they should stop, look, and listen, before making the venture does not apply in a case like the present. In such case as this, the rule is, as established by a number of well considered cases, that the passenger of the railroad is justified in assuming that the company has, in the exercise of due care, so regulated its trains that the road will be free from interruption or obstruction when passenger trains stop at a depot or station to receive and deliver passengers." *Balto. & Ohio R. R. Co. vs. State, use of Hauer, et al.*, 60 *Md.*, 463. And in dealing with the prayer which we have quoted, he says: "It entirely ignored the fact that the deceased was a passenger, and was entitled to the protection of a passenger in passing over the intervening track to board the train that was to take him on his way to Frederick. It required of the deceased the exercise of care and caution to ascertain whether there was danger of a passing train, before attempting to cross the track to board the train that he was required to take; whereas he was, unless he *saw* or *knew* of the approaching train, justified in acting upon the implied assurance that no train would be allowed to pass the station to obstruct the transfer of passengers from one train to another." 60 *Md.*, 465. We do not see how we can hold as matter of law, that the plaintiff

was guilty of contributory negligence, because he did not look-out for the approaching train before he left the car in which he was travelling. In our opinion the whole question was properly left to the jury by the instructions given at the trial.

*Judgment affirmed.*

(Decided 19th June. 1890.)

McSHERRY, J., dissented.