FERGUSON *v.* BALTIMORE AND ANNAPOLIS
RAILROAD COMPANY

[No. 123, October Term, 1950.]

*Decided April 11, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Daniel E. Klein* and *W. Giles Parker*, with whom was *Lawrence E. Ensor* on the brief, for the appellant.

*Jesse Slingluff, Jr.*, with whom were *Michael P. Crocker* and *George Cochran Doub* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

This case was instituted on March 29, 1949, in the Superior Court of Baltimore City, by Denton J. Ferguson (appellant) against The Baltimore and Annapolis Railroad Company, a body corporate, (appellee). It is grounded on negligence and arises out of an accident in an attempt by the plaintiff to board the defendant's train. The defendant filed general issue pleas, the case was tried before a jury which rendered a verdict for the defendant, and upon judgment entered thereon the plaintiff has appealed.

The facts are as follows: The plaintiff lives at Woodlawn Heights, in Anne Arundel County, and had for several years before the occasion of the accident. Woodlawn Heights is a short distance from Woodlawn Station on the defendant's railroad. Plaintiff worked in Baltimore City and commuted to and from his work via the defendant's railroad. On the afternoon of April 1, 1946, the plaintiff went to the station for the purpose of taking a train to Baltimore City. He was the only

person there, and there was no one there at the station when the accident happened, except those in charge of the train. The train consisted of three cars. The first, or front car, was a combined motor and baggage car, the two other cars were passenger cars. Ferguson testified twice with respect to the accident, once before the jury, and once at a pretrial examination, which was offered in evidence and read to the jury. At the trial he testified: "I was working four to twelve all of that week and so I went up there about five or ten minutes of three in order to get the train. I usually go up there a little earlier for sometimes the train might be a little earlier or a little later. So I went up there and, as I was standing there, the train came in and the motorman on the train waved his hand to me as he went by. I waved back to him and the train just came right on into the station and slowed down. It slowed down pretty slow like, but it didn't seem to me to be to a stop. I didn't want to miss the train for on the Saturday before I had missed it and I had been late for my work and I didn't want to be late again. I didn't want to be late often for the Company did not like it very well. So I thought that I had better jump on it and that is what I did." And then again: "Well, I just started to get on it and he kept on going. I had started to walk down the platform. When the train passed I had just started to walk down the platform and I reached up my hand to grab hold of the handrails on each side of the steps as you go up—and I just put my right foot up on it, on the step when my foot slipped forward. Then when I started to get my left foot up, instead of getting on top of the step it went underneath the step and kept on sliding right on down. * * * I stepped on the step and I grabbed the handrails and then it seemed to me that my foot slipped—my right foot slipped when I put it on the steps. It slipped forward. * * * And that throwed me out of balance and so when I tried to put my left foot up on the step, instead of getting it on top of the step it just went underneath. It started to go underneath."

He did not see the conductor, and he was attempting to get on the train by way of the rear steps of the second car. The train was going north, to Baltimore, and the platform and station are on the right side of the track. He does not know the length of the platform, but a train consisting of three cars can stop beside it. "A person could board any one of three different cars in there. On that platform." He said he grabbed the rails on each side of the steps of the car and "when my foot slipped then I pushed myself away from it after I had lost my footing on the footboard. I shoved myself away from it. Of course, I rolled on the ground for when I got my foot away it was mashed off." He does not know when the train stopped, but it did stop, and he got up and hopped over to the station, a distance of "Well, about five or six feet I would say. Something like that. It was not very long. Very far.", and he leaned against it. He then went over and entered the train through the rear door of the second car. He was helped up the steps from the platform to the car by the conductor. He does not know how far up the station platform the rear of the second car was when he boarded it. On his pretrial examination he gave this account of the accident: The train pulled in and he and the operator spoke to each other and "he (the operator) pulled right on down and he didn't seem to want to stop and the train was passing on and he just slowed it down. Then I seen it wasn't stopping, but it did cut down right slow and I thought I would step on and go ahead because he didn't seem to be stopping at all and then I don't know what happened but my foot slipped on that footboard. * * * and when my foot slipped, then I tried to get my other foot up and instead of getting it in, I just got my toe underneath and under I went. That's when I tried to catch myself when my foot slipped." He was trying to get on the second car. He did not see the conductor. He could not definitely say how fast the train was moving at the time, "but it wasn't over five, (miles per hour) I could say that"; and he said at that

time the train "seemed to be drifting" and that "usually the second car" stopped in front of the station. "Q. The front of the second car or the back of the second car? A. The back." He testified that he walked from the station toward the track as the train was pulling in, and he walked along with the train and then grabbed the handrail beside the steps. "Q. Did you grab the handle with your right hand? A. Yes. Q. With your right hand, and you stepped up with your right or left foot? A. With my right foot. Q. You stepped up with your right foot as you grabbed the handle. Did you grab the other handle with your left hand, too? A. I stepped up with my right foot and my right hand and I was reaching with my left hand at the same time, approximately both hands at the same time." At that time his right foot slipped forward and threw him off balance and his left foot was under the step and he was hanging on by his hands. "Q. Then what did you do? A. I tried to get away from it after I slipped and after my foot got hit, my business was to get away from there. If I hung to it, I would probably have got it up in the middle. * * * Q. Did the train stop? A. Yes, he came to a full stop then. Q. When did it come to a full stop? A. Right away after I slipped." He heard no signals and after the train came to a full stop he went back to the station. Again he said that the train was stopping "while I was trying to get back on my feet again". He does not know how far the train went after he was hurt. "Q. Did it go far or just a little distance? A. No, he didn't go very far. I would say he went about eight or ten feet, something like that." He said: "Once I started getting on the car and after I got hurt, that's all I know. * * *"

Ferguson, at the time of this accident, had a deformed right hand. The three middle fingers thereof were cut off and he only had a thumb and a little finger on his right hand. This was the result of an industrial accident, for which he received compensation. He testified, nevertheless, that the grip of his right hand was strong.

There was some evidence in the case, by Ferguson and other witnesses, that it was the practice of the railroad in the operation of its trains, not to make a full stop when there was only one male passenger at this station, but for the train to slow down and the single passenger would board the train while it was still in motion. Both the motorman and the conductor of this particular train, who had been on the run between Baltimore and Annapolis and return for many years, denied this; and the conductor stated that it was the custom of Ferguson to board and leave trains before they came to a full stop, and he had warned Ferguson frequently of the danger, and requested him not to do so. There is no evidence that Ferguson was invited to board this train before it stopped, by any agent in charge of its operation.

At the conclusion of the plaintiff's case defendant submitted a motion for a directed verdict, which was refused; and at the conclusion of all of the testimony the defendant renewed its motion for a directed verdict, which was refused.

It is the contention of the appellant that the court committed reversible error in its charge to the jury. But, however that may be, if the court was wrong in submitting the case to the jury because the plaintiff had submitted no evidence legally sufficient to show that the defendant was guilty of primary negligence which was the direct and proximate cause of the accident, then the court committed error in this respect; and the fact that the jury found a verdict for the defendant did not injure the plaintiff.

"In all cases of this kind there are two questions involved. First, whether there be negligence on the part of the defendant which produced the injury complained of? and, secondly, whether the party injured might, by the exercise of ordinary care on his part, under the circumstances of the case, have avoided the accident?" *Baltimore & O. R. R. v. State, to use of Hauer*, 60 Md. 449.

While one in a case like this must show that the dedendant committed primary negligence, nevertheless he cannot recover if he was guilty of reckless negligence.

"But while such is the general principle, in each case the special facts and circumstances must be considered, and their bearing upon the propriety of the conduct of the party injured, except where the facts are clear and undisputed, must be submitted to the jury for their consideration.

"The want of ordinary care on the part of the party injured is matter of defense, and the *onus* of proof of the fact is upon the defendant. And in considering the facts, the question of ordinary care on the part of the party injured is not to be determined in an abstract way, but relatively, as it may be connected with and dependent upon the duty and obligation of the defendant. It is settled, by all respectable authority, that while the carriers of passengers are not insurers of absolute safety, yet they are bound to exercise reasonable care, according to the nature of their contract; and as their employment involves the safety of the lives and limbs of their passengers, the law requires the highest degree of care which is consistent with the nature of their undertaking." *Baltimore & O. R. R. v. State, to use of Hauer, supra; Baltimore & O. R. Co. v. Kane,* 69 Md. 11, 13 A. 387; *Cumberland Valley R. R. v. Maugans,* 61 Md. 53; *United Rys. & Electric Co. v. Weir,* 102 Md. 286, 62 A. 588; *Philadelphia, W. & B. R. R. Co. v. Anderson,* 72 Md. 519, 20 A. 2, 8 L. R. A. 673. See *Hunter v. Cooperstown & S. V. R. Co.,* 112 N. Y. 371, 19 N. E. 820, 2 L. R. A. 832; and *Hunter v. Cooperstown & S. V. R. Co.,* 126 N. Y. 18, 26 N. E. 958, 12 L. R. A. 429.

The cases above cited are based upon the principle that if an agent of a carrier induces a passenger to act in a manner that might be negligent (provided it is not a gross or wanton act) then that negligence may be explained away by all the facts and circumstances surrounding the occurrence, and it is generally a matter for the jury. But where there is a failure to show

primary negligence on the part of the carrier, of course, the case should be withdrawn from the jury, on motion of the defendant. On the afternoon of this accident the train moved into the station perfectly normally. It was slowed down and it stopped where it usually stopped beside the platform. It was there after the accident, and there is no evidence in the case that it was moved after the accident. Ferguson, after the accident, got on the rear steps of the second car, from the platform. Indeed there was nothing unusual in the operation of the train as it moved to and stopped at this station. No one invited Ferguson to get on the train while it was in motion. If he thought the train was not going to stop, there was no reason at all for him to have thought so. It did stop. In our judgment the agents of the railroad committed no negligence at all in the operation of the train that afternoon.

This case should have been withdrawn from the jury. The plaintiff suffered no injury by the jury's verdict. It should have been instructed by the court to return the verdict it did.

*Judgment affirmed, with costs.*