# CONSOLIDATED GAS ELECTRIC LIGHT AND POWER COMPANY *v.* JULIUS RUDIGER.

*Injury by Automobile—Pedestrian Crossing Street—Points Between Street Crossings — Contributory Negligence—Instructions—Burden of Proof.*

In an action for personal injuries received by plaintiff, an elderly man, struck by defendant's automobile while crossing a street and as he approached the curb, *held* that defendant's primary negligence and plaintiff's contributory negligence were for the jury.                                              pp. 228-234

A point where several streets and avenues met, although without anything to indicate in which directions persons should cross, *held* not to be a point "between street crossings" within Code, art. 56, sec. 209, so as to give a vehicle at that point an absolute right of way as against a pedestrian.          p. 236

In an action for injuries to plaintiff by defendant's automobile, a prayer that defendant had the right of way if the place where plaintiff was crossing the street at the time of the accident was not a "regular crossing" but "at a point between crossings" was objectionable as not defining a "regular crossing," and also by reason of lack of evidence that there were any such crossings in that vicinity available to plaintiff.     pp. 236, 237

A prayer was objectionable which stated that if plaintiff, while crossing the street, stopped and looked in the direction of defendant's automobile, then the chauffeur had the right to assume that the plaintiff would give him the right of way, since whether the chauffeur could make such assumption depended not only on the chauffeur's distance at that time from plaintiff, but also upon other facts associated therewith.          p. 237

In an action on account of negligence, it is proper to instruct the jury that, to defeat a recovery on the ground of contributory negligence on plaintiff's part, the burden of proof is on defendant to show that plaintiff was guilty of negligence, and that such negligence directly contributed to produce the injury.
pp. 237-240

Such burden of proof imposed on defendant is borne by him even though plaintiff's negligence is disclosed by plaintiff's evidence.                                                    p. 240

*Decided June 29th, 1926.*

Appeal from the Circuit Court for Harford County (HARLAN, J.).

Action by Julius Rudiger against the Consolidated Gas Electric Light and Power Company of Baltimore. From a judgment for plaintiff, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Alfred P. Ramsey,* with whom was *E. M. Sturtevant* on the brief, for the appellant.

*Edward H. Burke* and *Roszel C. Thomsen,* with whom were *H. Courtenay Jenifer, Robinson & Fahey,* and *Bowie & Clark,* on the brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

The appellee, Julius Rudiger, on September 1st, 1923, was struck and injured by an automobile owned by the appellant, the Consolidated Gas Electric Light and Power Company, of Baltimore, and operated by one of its employees in the discharge of his duties, while he, the appellee, was crossing the York Road in Towson, Baltimore County, Maryland.

Suit was brought by Mr. Rudiger against the appellant in the Circuit Court for Baltimore County to recover damages for the injuries sustained by him caused, as alleged, by the negligence of the appellant. The case was removed to the Circuit Court for Harford County, where it was tried and a judgment was recovered therein by the appellee against the appellant. It is from that judgment that this appeal is taken. There is but one exception found in the record, and that is to the rulings of the court upon the prayers.

There is a plat in the record which the reporter is asked to insert in his report of this case.

Mr. Rudiger, a short while before the accident, was standing with a number of others on the sidewalk and in front of and on the south side of the engine house, which is shown on the plat. He started to cross the York Road to Steiber's

store almost opposite and when he had reached, or nearly reached, the curb on the south side of the road, he was struck from the rear by the automobile of the appellant, which it seems had suddenly turned to the right, and after striking him the front wheels of the automobile went upon the sidewalk nearly at right-angles with the road. At the time of the accident there was in front of Steiber's store a pony and cart, in which there were one or two small children. The pony was near to and facing the curb with the cart extending out into the street at right-angles with the curb. Near to and south of the pony and cart was a truck parked against the curb, extending at right-angles with the road, and projecting into it a distance of eight or nine feet. York Road at the point where the appellee attempted to cross is about forty feet in width. .

Mr. Rudiger was at the time of the accident about eighty-five years old and was then and had been for thirty-six years bailiff in the Circuit Court for Baltimore County. He testified that the accident occurred between five and six o'clock in the daylight of a clear, nice day and the road was dry. Just before the accident happened he was standing with others on the corner of the engine-house. Before starting across the road he said he looked up and down, but saw nothing coming in either direction, nor did he hear anything. He said he crossed the road where the pony cart was, and when he was putting his foot on the curb he rested his hand on the pony, and at such time something struck him—it was the automobile. In crossing the road, he said, he was walking pretty fast, but not running, "as there was nothing in the way of my walking—no car about." On cross-examination he said there was "no crossing anywhere there" near where he crossed, that is, "no place fixed there for people to walk on in going across." He was then asked if he saw a car coming in either direction when he was crossing and he said, "No, sir," and when asked if he looked, he replied, "You bet I looked." He further testified that from the middle of the road at that point you can see several hundred yards up

York Road towards his home, but you cannot see so far from the cross roads; that "from the middle of the pike you can see some distance towards Baltimore, but there is very seldom any danger coming up the pike from that direction, as the automobiles do not come so fast," it being up grade. He said, "I did not go fast or slow, I didn't run, but I went as fast as I could walk." "Ques. When you got in the middle of the road did you stand still? Ans. No, sir; I wouldn't do that, anyhow. Ques. You would not do that? Ans. No, sir; I had no cause to stop; I wanted to get across. Ques. You don't know where the car struck you—whether it was a car or really what did strike you? Ans. I do not know what struck me, because I was looking the way I was going. I had put one foot on the curbstone; but, before I got the other up there, I was struck."

Joseph S. Parker, manager of Steiber's grocery and provision store, testified that he did not see the car strike Mr. Rudiger, but saw him falling to the ground a few feet from the curb. His head was within three feet of the curb and his feet were out towards the middle of the road. A truck was backed in there and a pony cart was between Mr. Rudiger and the truck. The noise on the street first attracted his attention to the accident and he ran to the door and saw the automobile coming towards the store, but he did not see it before it struck Mr. Rudiger. The curb is about six inches high in front of the store. He further testified that Mr. Rudiger was coming towards the curb and fell toward it. That after he was hit and after he fell to the ground, the car moved on and the two front wheels at least went up over the curb. The car was north of where Mr. Rudiger lay upon the road.

The evidence of Walter Hutchins, who was standing in front of the engine house about the time of the accident, was about the same as Joseph Parker.

George Gearhardt, a member of the state police, testified that he heard screeching of brakes, and when he went around the engine house he saw a car on the pavement. The front

wheels of the car were on the pavement and Mr. Rudiger lying on the road just outside of the curb line. He saw upon the street marks from tires "drawing on the road," from the back of the car out. They were approximately a length and a half to two lengths of a car or a little farther. The marks were in a half-circle. Mr. Rudiger was lying below the car on the roadway. North of the engine house there is a street that goes through. He did not recall hearing any horn, but was attracted by the brakes dragging on the road.

Carvel Cox testified that he saw the accident as he was coming out of Held's bakery store, which is on the corner above and next to Steiber's store. When he ran out of the door he saw the car coming at a speed of between twenty or twenty-five miles an hour, possibly a little faster. "Just as he walked out he got about two or two and one-half feet from Mr. Rudiger, the machine came into the curb. The reason for that was that a lady with two children in a pony cart was backing out and the truck just below them cut him off and he threw the machine right into the curb. The whole thing went up on the pavement and just as it struck the curb, the right front fender struck Mr. Rudiger and swung him around." He too did not hear any horn blow. That when Mr. Rudiger was struck he was standing at the pavement with one foot on the curb and one on the road, like he was just going to cross or had just crossed the street. The impact threw Mr. Rudiger out into the road about one foot from the curb. He did not notice any marks on the road. "The car was coming straight down the York Road." When he first saw it, it was just before it came to the cross roads at Shoemaker's store, and was to the right of the east of the York Road, and between three and four feet from the curb, on the east side of the road. The road is very wide right in there. After the driver crossed Allegheny Avenue he must have been out six feet from the curb and as he came to pass Steiber's store he might have been more, but he was not any less. Between the pony cart and the corner there was only one truck and that was on the lower side of the pony cart.

The lady in the cart was backing out. The driver saw that, started to throw his brakes on as soon as he saw the pony was backing out. The driver either had to turn to the right and go on the pavement or hit the pony cart because he could not stop and the pony cart was about two feet past the truck and was backing out." ·

Linwood Brookhart, a lieutenant and driver of the Towson fire department, testified that he was sitting in the front door of the engine-house when Mr. Rudiger started across· the street. He did not notice him any more until he heard the noise of the brakes; when he looked up and saw the automobile strike him. He was then, he thought, about six feet from the west curb. The noise of the brakes first attracted his attention. He did not hear any horn blow. Mr. Rudiger, when he went to the curb next to the engine-house, before crossing the street, stopped and looked and then started across the street. The left front fender of the car struck him. The automobile turned into the right toward the curb when the fender sideswiped him. "You know how the fenders turn down in front—that is what struck him." The front part of it struck him. Other witnesses for the plaintiff testified largely in corroboration of the evidence we have stated.

Edmund J. Mullaney, the driver of the automobile, when produced as a witness for the defendant, testified that he was going south on the York Road and stopped on the northwest corner of Allegheny Avenue and York Road to wait for Mr. Mattes, who had accompanied him to Parkton on business that day. After Mattes had passed him and "I was beginning to follow him—just as I started from the northwest corner of York Road and Allegheny Avenue, I saw a man," whom at that time he did not know, but who afterward proved to be Mr. Rudiger, "leaving the curb" on the east side of York Road at the engine house. He at the time had one foot on the road and seemed to be bidding some one good-bye. The witness then said "I blew my horn, Mr. Rudiger looked and walked out into the road. He stood there and looked at

me as if he was deliberately standing there to let me pass. Another gentleman was coming north in a sedan—I later heard it was Mr. Hurst * * * After I got close to Mr. Rudiger I thought he was going to let me pass, and I paid attention to machines that might shoot out on the road on the right. I forgot about Mr. Rudiger and when I looked around again he was right in front of me. I don't know whether I put on my brakes, threw the car into low gear or what I did, but the next time I saw Mr. Rudiger he was right alongside of the car about one foot back from the left wheel; and he hit the fender next to the running board and crumpled up. He fell over backwards and my two front wheels jumped up on the pavement; my rear wheels hit the pavement and I stopped." When he observed Mr. Rudiger standing in the middle of the street, he was looking at the witness and was about twenty-five feet away. At that time he was not going over eight or ten miles an hour. When he stopped the witness started to move up to pass him. "Ques. How far did you come from the point where you were stopped in the street to the point where the collision occurred—what length of time did it take you? Ans. I don't think it was over a half a minute. He was right on me. Ques. How was he travelling when you found that he was right on you? Ans. He was running—he jumped right in front of the machine—it looked to me that he was going to stop in front of the machine. I had glanced toward the curb on the side, and when I glanced his way, he had jumped right in front of me, and I was not more than six feet from him and I pulled to the right and went up on the pavement." The impact between Mr. Rudiger and the car happened "just as the automobile wheels hit the curb."

William D. Hurst, witness for the defendant, testified that on the occasion of the accident he was driving north on York Road and as he neared the engine house he noticed an elderly gentleman going southwest across the street. "Just before he got to the opposite side he sort of hesitated, turned back and went back four or five steps, and then turned again as if he had seen some object and rushed right back to the west

side of the street." That when he stopped he was about fourteen feet from the west curb. He was walking right fast. The automobile which struck him was "going south on York Road and got almost to the man when the man driving the car turned it to the west and pulled to the curb, and as he pulled to the curb the man and the automobile came together." The left-hand side of the car struck the man. He could not see whether it was the fender or the running board. It looked to witness as though it struck Mr. Rudiger in the feet or legs." When he first saw the car, "it had almost stopped at the avenue above the engine house and then it came on again. It was not travelling fast * * * It looked to him as though it almost stopped along about the corner of Allegheny Avenue near Mr. Held's store." The witness "saw Mr. Rudiger push in between some vehicles. If Mr. Rudiger had looked in that direction there was nothing to prevent him from seeing this man coming down there." The witness stopped just about the time the accident occurred.

At the conclusion of the evidence the plaintiff offered three prayers, all of which were granted. The defendant asked for seven instructions. Its third and fourth prayers were granted while the others were rejected. Its first and second prayers asked for a directed verdict in favor of the defendant, the first upon the alleged ground that the injuries sustained by the plaintiff were not caused or contributed to in any way by any negligence of the defendant, and the second upon the ground that such injuries to the plaintiff were directly caused by the negligence of the plaintiff.

Upon the facts of this case the defendant's primary negligence and the plaintiff's contributory negligence were questions for the jury to consider and determine, and the court was right, in our opinion, in refusing to hold as a matter of law that the defendant was not guilty of primary negligence or that the plaintiff was guilty of contributory negligence.

The defendant by its fifth prayer asked the court to instruct the jury as follows: "That under the laws of this State between street crossings in cities, towns and villages vehicles have the right of way over pedestrians, and if the

jury believe from the evidence that the point where the plaintiff was crossing the York Road at the time of the accident referred to in the testimony in this case was not a regular crossing for pedestrians, but was at a point between crossings, then the jury are instructed that the car of the defendant had the right of way at the time and place of the alleged accident; and if the jury further find that the plaintiff stopped at a point at or near the centre of York Road and looked in the direction of the defendant's automobile, then the chauffeur driving said automobile had the right to assume that the plaintiff would give him the right of way; and if the jury further find that the chauffeur operating the defendant's car was a skilled operator, and exercised reasonable care to avoid the accident to the plaintiff after seeing him leave the center of the highway and start toward the west curb, as mentioned in the evidence, then the verdict must be for the defendant."

It is provided in section 209 of article 56 of the Code of 1924, that "all pedestrians shall have the right of way at street crossings in the towns and cities of this state, except where traffic is controlled at such crossings by traffic officers. Between street crossings in such town and cities, vehicles shall have the right of way."

York Road, until it reaches Joppa Road going north, runs nearly north and south. At that point it turns towards the west at an angle of about forty-five degrees, but though it turns at the point named, there is a road extending north beyond Joppa Road, known as Dulaney's Valley Road, running in the same direction as York Road before it reaches Joppa Road, which is in fact a continuation northward of York Road. Shortly after the turn is made in the York Road and at its intersection with Joppa Road, Allegheny Avenue enters it from the west. As will be seen by the plat, there are a number of roads and avenues which come together near the scene of the accident. The engine house is located in the acute angle formed by the intersection of Dulaney's Valley Road and the York Road, the front of the house being at the intersection of these two roads, with a sidewalk

in front of it, and York Road and Allegheny Avenue meet at a point immediately west of it.

It would certainly seem that the south corner of the sidewalk in front of the engine house, the place from which the plaintiff started to cross the York Road, was the proper place from which to cross said road in going south from that point. The plaintiff's place of destination was Steiber's store nearly opposite and as near, if not nearer, to such starting point than either the corner of Allegheny Avenue and York Road, or the corner of York Road caused by the turn therein above mentioned. And it may be said that the two corners mentioned are but a short distance apart, only the width of the two lots upon which Held's bakery and Steiber's store are located, and there was nothing to indicate a crossing from the south corner of the sidewalk at the engine house to either of said corners or at any point between them. And from the peculiar location of the streets at or near the point of the accident, the only direct way a pedestrian could go, in going south from the engine house to a place south of Allegheny Avenue and west of York Road, was to one of said corners or at a point between them. The plaintiff was seen by the chauffeur of the defendant's car when he started to leave the curb at the point named, from which place, as we have said, he had a right to start. The chauffeur at the time did not know in what direction he would cross the road, and as he was starting from a point where he had a right to start, the chauffeur had, we think, no absolute right of way such as he would have had, had the plaintiff been crossing from a point between two well-known designated crossings, and the care and caution he was to observe by reason thereof was greater than that required of him had the plaintiff been crossing the road between crossings such as we have described above.

By the prayer, the jury was asked to determine whether or not he was crossing at a *regular* crossing, or at a point between crossings, and if they found that it was not at "a regular crossing," but "at a point between crossings," the

defendant had the right of way.    The term *"regular* cross-
ing" is not used in the statute, nor is it attempted to be
defined in the prayer, and there is nothing in the evidence to
show that there were any such crossings in the vicinity of
the accident at which the plaintiff could have crossed.    There
was not, we think, sufficient evidence before the jury from
which they could determine such question.    The prayer is
likewise objectionable, we think, in that it instructs the jury
that if it found that "the plaintiff stopped at a point at or
near the center of York Road and looked in the direction of
the defendant's automobile, then the chauffeur driving said
automobile had the right to assume that the plaintiff would
give him the right of way."    It can hardly be assumed, from
the mere fact that the plaintiff, while in the center of the
road, stopped and looked in the direction of the automobile,
that he would there stop and permit the automobile to pass.
If not his duty to look while in the center of the road, it was
certainly the exercise of commendable caution and care for
him to do so, and because he stopped while looking, that
would not warrant the assumption on the part of the chauf-
feur of the automobile, wherever he might have been at the
time, that the plaintiff was to remain where he was without
moving until he had passed.    The chauffeur testified that a
very short time before the accident he stopped his automo-
bile on the west of York Road, immediately above Allegheny
Avenue.    The plaintiff in his testimony stated that when
he had started to cross the road he looked in both directions,
north and south, and saw no automobile coming.    It is possi-
ble, if not probable, that at such time the automobile of the
defendant was standing at the place mentioned, and as it
was not in motion, it caused the plaintiff no concern and he
proceeded across the road.    He may have again looked when
in the center of the road and in doing so may have stopped,
but whether the chauffeur could assume from such fact that
he was not to move on would depend not only upon the dis-
tance the chauffeur was at the time from him, but upon other

facts associated therewith. The court, we think, committed no error in its refusal to grant this prayer.

Nor do we think the court committed any error in its refusal to grant the sixth and seventh prayers of the defendant, because of the reasons given in passing upon its fifth prayer.

We find no error in the court's ruling in granting the plaintiff's first and second prayers, nor does it appear from the appellant's brief that it urges any serious objection to the granting of them.

This leaves only the plaintiff's third prayer to be considered by us. By it the jury were instructed "that in order to defeat a recovery in this suit on the ground of contributory negligence on the part of the plaintiff, the burden of proof is upon the defendant to show that the plaintiff was guilty of negligence, and that such negligence on his part directly contributed to produce the injury." This prayer has been offered and approved by this court in a number of cases: *Philadelphia, W. & B. R. R. Co. v. Hogeland,* 66 Md. 149; *Philadelphia, W. & B. R. R. Co. v. Anderson,* 72 Md. 519; *Balto. & O. R. R. Co. v. Stumpf,* 97 Md. 78; *Baltimore Traction Co. v. Helms,* 84 Md. 525; *Phila., B. & W. R. R. Co. v. Hand,* 101 Md. 233; *Fletcher v. Dixon,* 107 Md. 420; *Brown v. Patterson,* 141 Md. 293. But its correctness is now questioned by the appellant because of what has been said in other cases decided by this Court when passing upon somewhat similar prayers.

In the *Hogeland* case, 66 Md. 149, the plaintiff's fifth prayer was in the exact language of this prayer. And the court there said, on page 162, "All the instructions given on the prayers of the plaintiff are but plain legal propositions that admit of no controversy in this court, where they have been repeatedly sanctioned; and the court below, therefore, committed no error in granting such instruction."

In *Balto. & O. R. R. Co. v. Stumpf,* 97 Md. 78, the language of the fourth prayer of the plaintiff, which was granted by the trial court and approved by this court, was

likewise the same as that used in the third prayer in this case. The correctness of that prayer was assailed by the appellant in that case because of certain language used in *Baltimore Traction Company v. Helms,* 84 Md. 525, where it was said: "By the well-settled law applicable to the class of cases to which this belongs, it is not enough for the plaintiff to prove the negligence of the defendant, and the injury which followed, but he is bound also to establish by satisfactory proof, before he can recover, that he was himself free from negligence and exercised ordinary care to avoid the consequence of defendant's negligence." Judge Pearce, who prepared the opinion in the *Stumpf* case, in speaking of the language in *Baltimore Traction Company v. Helms, supra,* above quoted, said: "However that language might have been regarded, if it stood apart from any qualifying language, and if that case had been the first in this court dealing with this rule, it is impossible to suppose that the learned and careful judge who delivered that opinion intended to overrule without even mentioning the various cases in which it had been held that the burden of proof in this regard is on the defendant; and it is perfectly apparent from the very next sentence in that opinion, that the defendant's counsel in this case has misconceived the meaning of the language cited, for the court goes on to say, 'the right to recover depends upon two distinct propositions of fact; first, the negligence of the defendant, and, secondly, the exercise of due and ordinary care by the plaintiff, and if he fail to prove negligence on the part of the defendant, or if it appears from his own evidence that he was guilty of negligence directly contributory to the injury, he cannot recover. In the face of all of the authorities in this state, we cannot perceive how the correctness of this prayer can be seriously questioned."

In *Phila., B. & W. R. R. Co. v. Hand,* 101 Md. 233, the third prayer is the same as the third prayer in this case, and the Court there said, speaking through Chief Judge McSherry, "We need not set out the first, second, third and

fourth instructions given at the instance of the appellee (the plaintiff), because they are almost literal transcripts of those which were granted in the case of *Anderson v. Phila., W. & B. R. R. Co.,* 72 Md. 519. The Court, however, in that case, in passing upon the plaintiff's fifth prayer, which it held to be defective, used certain language in respect thereto, which is used by the appellant in an attempt to show that the third prayer in this case is bad, notwithstanding the fact, as we have said, that the Court in that case approved the third prayer therein, of which the third prayer in this case is an exact copy. The plaintiff's third prayer in this case was also approved by this Court in *Fletcher v. Dixon,* 107 Md. 420, in which the opinion was written by the late Chief Judge Boyd, and it was again approved when that case came the second time to this Court in 113 Md. 101. This prayer of the plaintiff was again approved in the case of *Brown v. Patterson,* 141 Md. 293, where Judge Boyd, speaking for the court, again said: "It is the familiar prayer in use in reference to the burden of proof as to contributory negligence and is substantially the same as the fifth prayer in the *Hogeland* case."

It cannot now be said, after the numerous times it has been sanctioned by this Court, that this prayer does not properly state the law as to the burden of proof in these cases. It is true that proof of the plaintiff's negligence is not confined to the evidence offered by the defendant, for it may be disclosed by the plaintiff's evidence. If so, the defendant has borne the burden placed upon him by this prayer. The prayer was, in our opinion, properly granted, and as we find no errors in any of the rulings of the court, the judgment will be affirmed.

*Judgment affirmed, with costs.*