## JAMES PAOLINI *v.* WESTERN MILL & LUMBER CORPORATION.

[No. 13, April Term, 1933.]

46

*Decided May 26th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Paul Berman,* with whom was *Leon Abramson* on the brief, for the appellant.

*Edwin W. Wells, James J. Lindsay,* and *John Y. Offutt,* submitting on brief, for the appellee.

PATTISON, J., delivered the opinion of the Court.

This is an appeal from a judgment for the defendant in an action brought, in the Superior Court of Baltimore City, by James Paolini against the Western Mill & Lumber Corporation for personal injuries and damages to his automobile, caused by a collision of the plaintiff's automobile with the defendant's truck. In the trial of the case, two exceptions were taken, one to the rulings of the court upon the prayers, and the other to the action of the court in refusing the plaintiff time in which to read the granted prayers of the defendant before proceeding with his argument to the jury. The plaintiff offered three prayers; his first and second were refused; his third was granted. The defendant asked for eleven instructions. Its A and B prayers asking for a directed verdict and its fifth prayer were refused; the others were granted.

In passing upon the court's rulings on the prayers, it is essential to state the evidence of the parties as to how the accident happened, or the collision occurred.

At the time of the accident, March 31st, 1932, about 6.40 p. m., the plaintiff was returning to his home at No. 1505 North Bentalou Street from his place of business at No. 612 Laurens Street. A light rain was falling and the streets were wet. The plaintiff was going west on Laurens Street in his automobile, and, as testified to by him, he approached the intersection of Stricker Street, going from eight to ten miles an hour, and looked north to his right, saw no one coming, and continued in his course. He then looked south to his left, down Stricker Street, and saw the defendant's truck coming towards Laurens Street. He could not say how fast it was going. "My automobile * * * was even with the curb on Laurens Street, and it (the truck) was about sixty feet south of me coming north on Stricker Street; the streets at this intersection are thirty-nine feet wide, and are paved with asphalt. The truck * * * where I seen it about the middle of the street, when he seen me, he was swinging to the left and pretty near, close to the northwest corner of

Stricker and Laurens." "As soon as I reached about the middle of the street (about five feet south of the north curb of Laurens Street if the same had been extended into Stricker Street) I was struck on the left-hand side door and he * * * shoved me, thrown me right underneath the dash." The bumper of the truck was inside of plaintiff's car, and was hooked up with it. When the automobile came to a stop, "it was about ten feet from the northwest corner of Laurens Street."

On cross-examination the plaintiff testified that at the time of the accident it was getting dark; that when he first saw the truck his automobile was at the northeast corner of Laurens and Stricker Streets "just about ready to pass Stricker Street, ready to go in Stricker Street." "I had slowed down already, looked to my right and the street was clear, nobody coming and I continued to go and I looked to my left and the truck was sixty feet from me."

Doc G. Headspette, the driver of the defendant's truck, testified he was going north on Stricker Street, and the plaintiff's automobile was coming west on Laurens Street. When the witness got to the corner, the building line, he looked and saw the plaintiff's car coming at a "rapid rate of speed," about sixty or seventy-five feet away. At that time he started to slow down, and, as the plaintiff was coming so fast upon him, he put on his emergency brake; he thought plaintiff "would have slipped over to his right a little bit after he was coming so fast, he would pull over, he was right in the center of the street, right in the middle. I grabbed my emergency brake, and just the time I got the emergency brake down, he ran right up into me and with his left. I intended to make a left-hand swing, my bumper, right-hand pumper struck his front door and mud guard. Both machines came to a stand-still."

Witness further testified that, when he first saw the plaintiff's automobile sixty or seventy-five feet away, it was in the middle of Laurens Street. It was then that he applied his brakes. When asked: "What happened to the rear end of

your truck?" he said: "My rear end skidded around to the right, and the front wheel sheered off the rear and skidded over to the right, trying to avoid hitting him after I saw him coming."

On cross-examination the witness testified that the sidewalk on Laurens Street at its intersection with Stricker Street was about eight or ten feet wide. "Q. When you got to the corner of this house you saw this machine coming and it was sixty to seventy-five feet from you? A. Yes, sir. Q. And coming down the center of the street? A. Yes, sir. Q. Did you lower your speed? A. Yes, sir. Q. And you were going how fast? A. Eight or ten miles an hour. Q. In what distance can you stop going eight to ten miles an hour? A. With the brakes I can stop within six feet if it's dry. Q. If the streets are wet, within what distance can you stop? A. You can't always tell. Depends how sudden you step on the brakes. Q. That night, in what distance could you have stopped? A. Well, that's sort of hard for me to answer, because I don't know, after the truck skidded, I could have stopped at least within ten feet. Q. You could have stopped within ten feet on that particular night? A. Yes. Q. And you saw him coming up here and he was sixty feet from you, sixty to seventy-five feet and you could stop in ten feet, is that right? A. I judge that's right. Q. Did you stop in ten feet from the time you first saw him? A. Well, the time I first saw him I judge it was less than ten feet. I slowed up in less than ten feet. Q. How far did you go before you stopped? A. We both got together right in the middle of the street. Q. Come here and show us on the board. You mean right here (indicating)? A. Yes, sir. Q. That is at the intersection? A. Yes, sir, right in the center. Q. When did you attempt to stop? A. Just as I saw him coming. Q. You put your brakes on to stop? A. I started slowing down. I didn't exactly stop. Sometimes in a case like that you figure a man going to slow up. Q. You knew he had the right of way, didn't you? A. Yes, sir. Q. Why didn't you give it to him? A. He had plenty of

chance to speed up if he had swung over the line to the right, even if the truck had stopped. Q. But the truck skidded around to the right, you say? A. The rear end skidded around to the right and the front skidded over to the left. I put it over to the left after he made no attempt to avoid it."

The evidence of the plaintiff and defendant's driver is conflicting. The driver of the defendant's truck said that he first saw the plaintiff's car when he was on Stricker Street south of the building line at Laurens Street. At that time the plaintiff's car was on Laurens Street about sixty or seventy-five feet east of Stricker Street, approaching that street from the truck driver's right, going at a "rapid rate of speed." The plaintiff testified that he was on Laurens Street at the east line of Stricker Street, ready to pass into that street, when he first saw the defendant's truck. He was then going eight or ten miles an hour. The negligence charged against the plaintiff was that he was operating his car at a rapid rate of speed; while the negligence charged against the defendant's driver was his failure to yield the right of way to the plaintiff's car in accordance with the provisions of article 56, section 209, of the Code (as amended by Acts 1929, ch. 224), which provides that vehicles approaching a street or road intersection from the left shall yield the right of way to those approaching from the right, subject to the exceptions or qualifications therein mentioned. The question whether the plaintiff had the right of way over the truck thus became an important one, to be determined by the jury upon the facts adduced in evidence. *Taxicab Co. v. Ottenritter,* 151 Md. 532, 135 A. 587, 590; *Hendler Creamery Co. v. Friedman,* 160 Md. 526, 154 A. 93, 94; *Jersey Ice Cream Co. v. Bach,* 161 Md. 285, 157 A. 277.

The plaintiff's first prayer, which was refused, was offered for the purpose of presenting this question to the jury. It asked the court to instruct the jury "that under the law all vehicles shall have the right of way over other vehicles approaching at intersecting streets from the left, and shall

give the right of way to those approaching from the right, and if the jury find from the evidence that the defendant, its agent, servant or employee, on the night of March 31, 1932, was driving an automobile truck approaching from the left, at intersecting streets, the car belonging to and operated by the plaintiff, and shall further find that the said defendant, its agent, servant or employee, on the occasion aforesaid, did not give the right of way to the plaintiff's automobile, which was approaching from the right, if they so find, and that the plaintiff, who was then and there driving his automobile acted with due care and caution immediately preceding the accident, if they shall so find, and that the failure of the said defendant, its agent, servant or employee to give the right of way caused the collision in this case, then their verdict must be for the plaintiff."

The defendant by its seventh prayer, which was granted, also presented this question to the jury. By it the court instructed the jury "that a vehicle approaching another vehicle at an intersection from the right does not have an absolute right of way in every instance and if the jury find from the evidence in this case that at the time the automobile truck of the defendant reached the intersection, the automobile of the plaintiff was so far away that no danger of a collision could reasonably be anticipated, then the plaintiff did not have the right of way over the defendant's automobile truck, and if the jury find that the plaintiff's automobile was then and there being operated at an excessively high rate of speed, approaching such intersection and that the accident was directly caused by the plaintiff's failure to exercise ordinary care in his own behalf, then the plaintiff is not entitled to recover and the verdict should be for the defendant."

The question arises, Were all the essential facts of the case upon which this question was to be determined presented by these prayers, so as to enable the jury to determine the question fairly and properly?

The plaintiff seeks to recover in this case largely upon the

refusal of the driver of the defendant truck to yield to what the plaintiff claimed to be his right of way over the truck driver at the intersection of the streets where the accident occurred. The plaintiff was entitled to an instruction submitting the question of his right of way to the jury. *Hendler Creamery Co. v. Friedman, supra.*

The criticism of the defendant as to the plaintiff's prayer is that it does not require the jury to find any specific fact or facts showing the existence of plaintiff's right of way, but requires it to find simply whether the defendant's driver yielded the right of way to the plaintiff; and, although it goes to recovery, it ignores other facts in the case. This criticism is not altogether without merit. It was said by Judge Digges, speaking for this court in *Hendler Creamery Co. v. Friedman, supra*, following what this court had said through Judge Urner in *Taxicab Co. v. Ottenritter, supra*: "It is clear that a vehicle approaching an intersection from the right does not have an absolute right of way in every instance, because that question must be determined by the circumstances in any given case. This prayer, therefore, may be good under one set of circumstances, and improper under another. Nor does it follow that every violation of the rule of the road by the vehicle approaching from the right results in depriving it of the right of way."

The statute itself, section 209 of article 56 of the Code, as amended by chapter 224 of the Acts of 1929, provides exceptions or qualifications to the rule stated. The right of way does not inevitably accrue to the vehicle approaching from the right. As was said by Judge Urner in *Taxicab Co. v. Ottenritter, supra*: "The question whether a vehicle approaching from the right is sufficiently near the street or road intersection to have the right of way over a vehicle approaching from the left necessarily depends in each case upon its own facts. The width of the intersecting highways, the speed of the vehicles, and various other conditions might materially affect the issue as to whether an asserted right of way should be recognized or denied." It is from such

facts that the jury must determine whether or not the right of way exists.

This prayer, we think, fails to submit to the jury all the essential facts upon which the existence of the plaintiff's right of way must be determined. But is not the defendant's seventh prayer subject to the criticism made by the defendant of the plaintiff's first prayer?

The evidence of the defendant's driver was that the plaintiff's car was sixty or seventy feet from the intersection when he was at the building line eight or ten feet south of the south line of Laurens Street. The plaintiff by his evidence was at Stricker Street when the defendant's driver was sixty feet south of Laurens Street. There is no evidence to show how far plaintiff was from Stricker Street when the truck of the defendant reached the intersection. This was an important fact in determining whether the plaintiff was so far from the intersection that a collision could not reasonably be anticipated. At the building line of Laurens Street, where defendant's driver first saw plaintiff on Laurens Street, sixty or seventy-five feet east of Stricker Street, he was, as we have said, eight or ten feet from the south line of Laurens Street. As this street is thirty-nine feet wide, it is nineteen and one-half feet from its south line to the middle of it. The truck driver was therefore about thirty feet from the place where the collision occurred when he saw the plaintiff's car sixty or seventy-five feet west of Stricker Street. He said he was going eight or ten miles an hour. At that rate of speed he covered about thirty feet while the plaintiff in his car covered a little more than twice that distance. Consequently, by the defendant driver's own evidence, the plaintiff was not going much more than twenty miles an hour, which was not shown to be excessive or unlawful speed under all the facts and circumstances of the case. The defendant's driver testified that he could stop his truck that night, at the rate he was going (eight or ten miles an hour) in ten feet, although the streets were wet. If so, upon seeing the plaintiff's car where he says he saw it, he could have stopped

his truck before going on Laurens Street, and thereby could have avoided the accident. He said the car was coming at a "rapid rate". If so, the distance it had to travel before reaching Stricker Street would be more speedily covered, thereby increasing the danger of collision should the defendant's driver proceed to cross Laurens Street in front of him.

Upon the facts stated, the jury was instructed that the plaintiff did not have the right of way, if they should find, expressed in general terms, "that at the time the defendant's truck reached the intersection, the plaintiff's automobile was so far away that no danger of a collision could reasonably be anticipated." The fact contained in this prayer, which, if found to exist, would defeat the plaintiff's right of way created by the statute, was, upon the facts of the case, too general and indefinite in its nature, and the prayer should not have been granted.

The plaintiff's second prayer, which was refused, was upon the question of contributory negligence. This prayer is in the usual form, and is one that has been many times approved by this court. We find nothing in the facts to render it inapplicable to this case. *Consol. Gas etc. Co. v. Rudiger,* 151 Md. 238, 134 A. 326; *Phila., W. & B. R. Co. v. Hogeland,* 66 Md. 149, 7 A. 105; *Phila., W. & B. R. Co. v. Anderson,* 72 Md. 519, 20 A. 2; *Phila., W. & B. R. Co. v. Hand,* 101 Md. 233, 61 A. 285; *Fletcher v. Dixon,* 107 Md. 420, 68 A. 875; *Brown v. Patterson,* 141 Md. 293, 118 A. 653; *Balto. Traction Co. v. Helms,* 84 Md. 525, 36 A. 119; *Balto. & O. R. Co. v. Stumpf,* 97 Md. 78, 54 A. 978. The prayer, we think, should have been granted.

The defendant's first prayer is one often used and approved by the court in this class of cases, and we discover no reversible error in the court's action in granting it in this case.

The defendant's second prayer, that, if the jury "find from the evidence in this case that the injury complained of resulted from an unavoidable accident, then their verdict must be for the defendant," is also often used, and in some cases

is approved by this court. Whether it should be granted in any case depends upon the facts of that case. A prayer of this character was offered and rejected in *Schapiro v. Meyers,* 160 Md. 210, 153 A. 27, 28. In that case a boy, while crossing the street, was run over by an automobile. In discussing that prayer, this court, speaking through Chief Judge Bond, said the "coming together of a pedestrian and an automobile could, under the circumstances, clearly have been avoided by care on one side or the other, plaintiff or defendant, the description of unavoidable accident appears to be inapplicable, and rejection of the prayer was proper for that reason. *Dwyer v. Chew,* 149 Md. 281, 285, 131 A. 350." *Washington etc. Turnpike v. Case,* 80 Md. 36, 30 A. 571, 573; *Leland v. Empire Engineering Co.,* 135 Md. 217, 108 A. 570, 574. As was said by Chief Judge Boyd in the last-cited case: "This prayer was in our judgment liable to mislead the jury by merely stating that proposition of law, without informing them what the law regards as an unavoidable accident, or qualifying the prayer by telling the jury that the defendant might be guilty if the jury found that it had been negligent in placing the post in position," an important fact in that case.

In this case, as in *Schapiro v. Meyers, supra,* the collision could have been avoided by care on one side or the other, plaintiff or defendant, and the description of unavoidable accident appears to be inapplicable. An unavoidable accident is defined by Judge McSherry in *Washington etc. Turnpike v. Case, supra,* as "an inevitable occurrence, not to be foreseen and prevented by vigilance, care and attention, and not occasioned or contributed to, in any manner, by the act or omission of the company, its agents, employees or servants."

The defendant's second prayer, we think, should not have been granted.

We discover no error in the court's action in granting the defendant's third prayer; and no objection is urged by the plaintiff against its fourth prayer.

The jury were instructed by the defendant's sixth granted prayer that, if they find from the evidence that at the time of the happening of the accident "the driver of the defendant's automobile was in the exercise of ordinary care, and that the collision was caused solely by the skidding of said automobile truck and without negligence on the part of the defendant's driver contributing thereto, then the plaintiff is not entitled to recover and the verdict of the jury must be for the defendant." This prayer segregates one act of the defendant and one movement of the car from all others, and from these facts the jury is to find whether such movement of the car was the sole cause of the collision, and whether the negligence of the defendant's driver contributed to that movement. This prayer, we think, was calculated to mislead the jury. The jury might well conclude that the skidding was the immediate cause of the collision, and that the defendant did not by any negligent act in the operation of the truck at that time contribute to its skidding; and the minds of the jury might well have been diverted thereby from other facts in the case, including plaintiff's alleged right of way, which should have been considered by them in reaching their verdict. For the reasons stated, we think the prayer should not have been granted.

In our opinion, the eighth prayer should likewise have been refused for the reasons assigned in the discretion of the defendant's sixth and seventh prayers.

It is stated in the appellant's brief that he would have filed special exceptions to a number of defendant's prayers had he been given the opportunity to examine them; but, as he was not allowed to examine the prayers, no exceptions were filed. The exception appearing in the record as to the court's action thereon is not pressed by the appellant, as he states "the exception was not properly reserved."

The judgment appealed from in this case will be reversed because of the errors herein stated.

*Judgment reversed, new trial awarded, appellee to pay costs.*