## ETHEL WINTROBE *v.* BARNEY HART
[No. 28, April Term, 1940.]

*Decided May 22nd, 1940.*

The cause was argued before OFFUTT, PARKE, MIT-
CHELL, JOHNSON, and DELAPLAINE, JJ.

*Roszel C. Thompson* and *J. Gilbert Prendergast,* with
whom was *Irving Grandberg* on the brief, for the ap-
pellant.

*Foster H. Fanseen* and *Philip S. Ball,* for the appellee.

JOHNSON, J., delivered the opinion of the Court.

On the evening of April 1st, 1939, Ethel Wintrobe,
while attempting to walk across Reisterstown Road at
its intersection with the north line of Fulton Avenue,
came in contact with an automobile owned and driven
by appellee, Barney Hart, and in consequence thereof
sustained serious and painful bodily injuries. Contend-
ing that such injuries were caused by appellee's neg-
ligence and unskilfulness in the operation of his motor
vehicle, she brought suit in the Baltimore City Court to
recover damages. The verdict of the jury having been
for the defendant, this appeal was taken from the judg-
ment entered thereon, and the sole exception contained
in the record relates to the rulings of the trial court upon
the prayers, it being Mrs. Wintrobe's contention that
the first three granted on behalf of appellee were highly
improper, misleading, and confusing in view of the evi-
dence offered on her behalf.

Reisterstown Road, which is 68 feet in width, is a con-
tinuation of Pennsylvania Avenue, both of which streets
run, generally speaking, north and south, and intersect
Fulton Avenue, which runs east and west. The last

named street is 61 feet in width west of the intersection, but only 45 feet wide east of it. Certain street car tracks curve around the corner formed by the east line of Pennsylvania Avenue and the north line of Fulton Avenue, the westerly track being 31 feet and 8 inches from what, for the purposes of this case, may be described as the westerly line of Pennsylvania Avenue, which line is one of the sides of a triangular space in Pennsylvania Avenue and described in the evidence as an "island," the south side of which forms the north line of Fulton Avenue. Upon the corner formed by this north line and the east line of the triangle are located a police call box, a telephone pole, and a lamp post. Near that corner, but slightly to its north, there is a walkway for pedestrians extending easterly to the east line of Reisterstown Road. The width of the walkway was estimated as 8 feet, but it does not appear with certainty that at the time Mrs. Wintrobe was injured its lines were distinct. On the opposite corner, formed by the intersection of the east line of Reisterstown Road and the north line of Fulton Avenue, there is a drug store, and on the east line of Reisterstown Road 33 feet from the corner a fire plug is located. There is also a food market several feet west of the triangular space, but somewhat north of Fulton Avenue.

Mrs. Wintrobe's injuries were sustained around 8:45 in the evening, while she was in the act of crossing Reisterstown Road after leaving the southwest corner of the island previously referred to. She had previously visited the food market, made some slight purchases and, according to her testimony, walked across to the island and waited for the signal light to show green. When it did so, she started across and, if believed, the evidence would support a finding that at the time she was struck she was upon the pedestrian walkway, or in any event quite near it, and going toward the drug store on the opposite side of Reisterstown Road. At that time it was rainy or misty, and she carried her purchases and a closed umbrella. She stated that she did not start across

until the light had showed green; that she walked over "two or three tracks" (street car tracks); that she heard no signal or warning of any kind from an automobile, but could not tell definitely where she was when she was struck, nor did she attempt to say that she was directly in the pedestrian's walk while crossing over, but, as stated, it would have been difficult for her to have been positive about this, since according to some of the testimony its lines were faded and indistinct. She further testified that when the light showed green she looked but saw no oncoming cars, but she did not recall that just prior to being struck she had again looked to the right; and she never saw the Hart car until it struck her.

John Kreiner, owner of a news stand at the corner of Fulton Avenue and Reisterstown Road, testified that at the time Mrs. Wintrobe was injured he was at his place of business, and his attention was first attracted to the accident when he heard a lady "scream"; that he ran up and helped pick up Mrs. Wintrobe out of the street, and placed her in the Hart car. When he first turned around after hearing the scream, the automobile was standing still and facing north on Reisterstown Road, and its front wheels were not over eight or ten feet from the "white line." He was asked what white line he referred to and answered that it was the second one "closest north." The witness evidently referred to the north line of the pedestrian's walkway as it appeared when he gave his testimony, it having been repainted at various intervals. There was also testimony that, at the time of the accident, the intersection of Reisterstown Road with Fulton Avenue was well lighted and you could see clearly across the street.

Appellee testified that he had proceeded east on Fulton Avenue to within ten feet of the corner formed by its intersection with Reisterstown Road; that he then made a wide left turn into Reisterstown Road and drove about fifteen feet after the signal had flashed green, when for the first time he saw Mrs. Wintrobe crossing the street

toward his car, but on its left side; that he immediately applied his brakes and, just as he had about stopped, the left front fender struck her, knocking her to the street.

On cross-examination he said that when he stopped his car Mrs. Wintrobe was directly in front of it; that his windshield wipers were working perfectly, the place was well lighted and his speed was about fifteen miles per hour, and he could stop his car within a distance of ten feet. He admitted that when he reached the intersection he failed to bring his car to a stop and attributed his failure to see her earlier to the fact that she was wearing dark clothing at the time, and stated his car stopped at the fire plug, that when he first saw appellant she was at a point between the middle car track and the easterly curb line of Reisterstown Road, but the conflict between his version and hers with reference to the light showing green for her or for the witness were questions for the jury to resolve. It is only necessary to observe that the testimony referred to was, if believed by the jurors, sufficient to enable them to find that appellant observed proper care in looking for oncoming cars before starting to cross Reisterstown Road; that she did not start until the traffic signal flashed green, and was then almost across the street, and near the easterly curb of Reisterstown Road in the pedestrian's walkway, when, without any warning by the sound of a horn or other device, she was struck by appellee's car. Having found those facts, the jurors could have further found that Mrs. Wintrobe's injuries were caused by the negligence of appellee in failing to observe her in the act of walking across the street at the regular pedestrian crossing, for it cannot be said as a matter of law that her failure to continue to look for oncoming cars was, under the circumstances detailed, an act of negligence on her part that contributed to her injuries, since she had the right to assume that appellee would not drive upon the walkway without giving some warning to enable her to avoid injury. *Hempel v. Hall,* 136 Md. at page 174, 110 A. 210; *Panitz v. Webb,* 151 Md. 639, 135 A. 406; Code, art. 56, sec. 209; *Merrifield v. Hoffberger,* 147 Md. at page 134, 127 A. 500.

This does not mean that a pedestrian using a crosswalk is free from ordinary care to look for approaching automobiles, but that he has a right to assume that the automobile driver will obey the law and yield him the right of way accorded by the statute. So far as appears in the present case, Mrs. Wintrobe did not discover that the motorist would fail to make his presence known until she had been injured.

This brings us to a consideration of the first three prayers granted at the request of the appellee as follows:

"First. The court instructs the jury that the mere happening of the accident referred to in the evidence raises no presumption of negligence on the part of the defendant, but to entitle the plaintiff to recover in this case, the jury must be satisfied by a preponderance of the evidence that the injury complained of was due solely to the negligence of the defendant, and if the minds of the jury are left by the evidence in a state of even balance as to whether the said injury was caused solely by the negligence of the said defendant, then the verdict of the jury must be for the defendant."

"Second. The Court instructs the jury that if they shall believe from the evidence in this case that the plaintiff, by the exercise of reasonable care and caution, could have seen the defendant's automobile approaching while she was walking across Reisterstown Road, in time to have stopped and thereby have avoided the accident referred to in the evidence, and that she failed to do so, thereby contributing to the happening of the accident and injuries complained of, then the defendant is not liable and the verdict of the jury must be for the defendant."

"Third. The Court instructs the jury that if they shall find from the evidence in this case that the plaintiff stepped or walked into the path or side of the defendant's automobile at a time when it was so close that by the exercise of ordinary care and caution, the driver of said automobile could not bring same to a stop in time to avoid the accident complained of, then the defendant is

not liable and the verdict of the jury must be for the defendant."

The purpose of a prayer is to instruct the jurors as to the law and enable them to apply it to such facts as they find to exist in a given case, but the mere fact that a judgment is not reversed does not signify that all prayers granted in a case on behalf of a successful litigant are approved by this court, since it is not infrequently found that although incorrect instructions are granted, nevertheless the opposite party was not injured by them. *Bozman v. State, use of Cronhardt*, 177 Md. 151, 9 A. 2nd 60. But instructions which are ambiguous, misleading, or confusing to jurors can never be classed as noninjurious. In that light the three quoted prayers must be considered.

The first half of the first prayer seems free from objection, since by it the jurors were instructed merely as to the burden of proof being upon the plaintiff (appellant), but the prayer does not end there, and proceeds to instruct the jurors that if their minds are by the evidence left in a state of "even balance" as to whether Mrs. Wintrobe's injuries were caused solely by the negligence of the defendant, they must find a verdict for the defendant. Appellee urges that this instruction was proper, because it was so limited by the word "solely" that it could not have possibly misled the jurors, while appellant contends that the last part of the prayer had the effect of placing upon her the burden of proving herself free from negligence on her part which in any degree contributed to her injuries. We have found no case decided by an appellate jurisdiction in which a prayer in this precise form has been approved, nor has any prayer identical in form been approved by this court, which has consistently held, in line we believe with the great weight of authority elsewhere, that the burden of proving contributory negligence is upon the defendant. *Paolini v. Mill & Lumber Corp.*, 165 Md. 45, 166 A. 609; *Consolidated Gas etc. Co. v. Rudiger*, 151 Md. 226, 134 A. 326, and cases there cited.

In *Consolidated Gas etc. Co. v. Rudiger, supra,* this court followed the rule announced, and held that it applied even though plaintiff's negligence was disclosed by his own evidence. See also 1 *Poe, Pl. & Pr.,* sec. 460; *Restatement of Law of Torts,* sec. 477; *Salmond on Torts* (9th Ed.), 477; *Thomas, Prayers and Instructions,* secs. 428, 151, 152; *Balt. & O. R. Co. v. Stumpf,* 97 Md. 78, 90, 54 A. 978.

In the present case there was a question as to the existence of contributory negligence, and also a question as to whether the doctrine of last clear chance was applicable. These tend to make the prayer confusing and cast upon the plaintiff the burden of proving, not only that the defendant was negligent, but that she herself was not guilty of contributory negligence, itself a defense. In this case the plaintiff's evidence tended to show a state of facts upon which it could not be concluded as a matter of law that she was guilty of contributory negligence, and in that situation it has been held in many jurisdictions that the burden of proving contributory negligence is not shifted from a defendant who relies thereon merely because of an allegation in the plaintiff's declaration alleging due care on the plaintiff's part. *Missouri Pac. Railroad v. Preston,* Kan. Sup., 63 P. 444; *Fitchburg R. Co. v. Nichols,* 85 Fed. 945; *North Alabama Co. v. Taylor,* 3 Ala. App. 456, 57 So. 146; *Denver & R. G. R. Co. v. Ryan,* 17 Colo. 98, 28 P. 79; *Bevis v. Vanceburg Tel. Co.,* 132 Ky. 385, 113 S. W. 811. Those holdings seem to be based upon a consideration that the allegation is mere surplusage and can have no effect upon the burden of proof. But it is unnecessary, for the purposes of the present case, to commit ourselves to that extent, but only sufficient to say that a defendant, in order to overcome the presumption of due care on the part of the plaintiff, must offer some evidence showing a lack of due care, but to meet the burden, the party carrying it must show that it is more probable than not that the fact occurred. In other words he carries the "risk of non-persuasion." In 9 *Blashfield, Cyc. of Automobile Law* (Perm. Ed.) sec. 5966, it is stated: "Contributory

negligence is a matter of defense in auto cases in all jurisdictions. It being an affirmative defense, it need not be negatived in the petition, complaint or declaration." For other cases in accord with that statement, see *Conrad v. Wheelock*, D. C., 24 Fed. 2nd 996; *Robertson v. Viens*, 110 Conn. 685, 149 A. 140; *Balto. & O. R. Co. v. Hawke*, 34 Del. 25, 143 A. 27.

If the jurors believed the plaintiff's evidence, they could scarcely have found her guilty of contributory negligence, and even had they entertained some doubts in regard thereto, under the law she would still have been entitled to recover, unless and until such negligence on her part had been established by appellee by a preponderance of the evidence. It must, therefore, be held that this prayer had the effect of placing upon her the burden of disproving contributory negligence on her part, which burden was upon appellee, and at the same time it relieved appellee of the burden cast upon him to prove such negligence on the part of appellant.

Nor do we find that the second prayer was good in view of the facts shown by this record. By Code, art. 56, sec. 209, Mrs. Wintrobe, if using the pedestrian crossing under the circumstances detailed by her, had the right of way over vehicular traffic. She further had the right to assume that the driver of the motor vehicle would obey the law and yield her the right of crossing. *Merrifield v. Hoffberger, supra.*

The prayer seems to instruct the jurors that, although she was upon the pedestrian cross-walk, yet if she could have stopped and avoided the accident and failed to do so, she was guilty of contributory negligence, but it has been held by this court that, in a situation similar to the one occupied by her, a plaintiff was not guilty of contributory negligence in failing to look up and down the street after she had rightfully undertaken to cross, since she had the right to assume that her right of way would be respected. *Hempel v. Hall, supra.* See also *Sheriff Motor Co. v. State, use of Parker*, 169 Md. 79, 179 A. 508, and *Balto. Traction Co. v. Wallace*, 77 Md. 435, 26 A. 518.

We think, under all the circumstances, that the second prayer imposed too strict a duty upon appellant, and should not have been granted, nor can we say that it was non-injurious.

The third prayer was approved by this court in *Sullivan v. Smith*, 123 Md. 546, 91 A. 456, 459. In the course of that opinion, it was stated: "While such a prayer might be misleading in some cases, we do not see how it could have been in this. * * * Of course, if the defendant's agent had been running the car in a negligent manner—for example was running at excessive speed—the prayer as it is framed would be objectionable."

An examination of the record in that case discloses an entirely different situation from the one here presented, for, according to the testimony of several witnesses, the child ran from the steps of the dwelling over the sidewalk and directly in front of the car, which was within the block, and being driven at a slow rate of speed. Manifestly, its driver could not have anticipated her presence in time to avoid injury to her, but that rule finds no application when a motorist approaches a pedestrian cross-walk which is likely to be used by persons under circumstances that require him to yield to the pedestrian the right of way. The prayer, in our judgment, is also bad as ignoring the evidence that she was crossing the street on the green light. Under such circumstances, it was error to grant the instruction that, if the motorist could not bring his car to a stop in time to avoid the accident, he was not liable. The instruction is also subject to criticism because it did not require the jury to find negligence on the part of the plaintiff in placing herself at the scene of the accident.

Appellee's fourth prayer correctly instructed the jury as to the effect of concurrent negligence upon plaintiff's right of recovery, and is free from objection.

No objection was made to the granting of the plaintiff's two prayers, by the first of which the jurors were correctly instructed that the burden of proving contributory negligence was upon the defendant, the second be-

ing the usual damage prayer. As a further objection to appellee's first prayer it should be stated that, in view of the facts shown by the record, it was inconsistent with appellant's first prayer, which we have heretofore considered.

Because of errors committed in granting appellee's first, second and third prayers, the judgment appealed from must be reversed.

*Judgment reversed, with costs, and case remanded for a new trial.*