BAKER *v.* COMMISSIONER OF MOTOR VEHICLES

[No. 198, September Term, 1961.]

*Decided May 1, 1962.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and MARBURY, JJ.

*Herbert J. Hirsch* for the appellant.

456

A. Owen Hennegan, Jr., with whom were *Armiger, Agnew & Hennegan* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The plaintiff-appellant, Baker, brought suit under the Unsatisfied Claim and Judgment Fund Law (Code (1957), Art. 66½, §§ 150-179) against the Commissioner of Motor Vehicles to recover damages for injuries sustained in a hit-and-run motor vehicle accident, in which the driver of the hit-and-run car was unknown. The appeal is from a judgment for the defendant entered upon the jury's verdict after the plaintiff's motion for judgment *n.o.v.* had been denied.

Four witnesses testified with regard to the accident—the plaintiff, his two companions and a police officer who arrived at the scene and investigated the accident a few minutes after it occurred. One of the plaintiff's companions, Harris, was the owner and driver of the car in which the plaintiff had been a passenger. His other companion was one Coleman, also a passenger in Harris' car. The police officer obtained a signed statement from Harris at the scene of the accident and obtained one from the plaintiff, Baker, somewhat later at the hospital to which Baker had been removed. The officer's reports noted alcohol on the breath of each of them, but he stated that Harris otherwise appeared normal. No statement was made by Coleman to the officer; in fact, the officer was not informed that Coleman had been in the car. The testimony of Harris and of Baker at the trial differed in certain respects, which will be mentioned below, from their statements as recorded by the investigating officer.

The accident happened at the intersection of Bond and Preston Streets in Baltimore at about 11:45 P.M. on a rainy Saturday late in August, 1959. Harris had been driving west on Preston Street intending either (as he said at the trial) to take Coleman to his home which was on the south side of Preston Street in the block just east of Bond Street or (as he reportedly said in his statement) to turn south on Bond Street to take Baker home. At the time Baker and Harris lived at the same place. Harris both passed Coleman's house and drove

across Bond Street without turning off Preston Street. Realizing that he had made a mistake, he stopped on Preston Street just west of Bond and then backed his car into Bond Street.

Harris said at the trial that he completed this maneuver with his car headed south and in the *southbound* lane on Bond Street. The police officer found the car headed south on Bond Street, and his diagram of the accident shows that it was entirely in the *northbound* lane (easterly side) of Bond Street. That street is 42 feet wide at this intersection. The officer's measurements showed the right side of Harris' car to be 23 feet east of the west curb of Bond Street and its front end to be 6 feet into Preston Street (that is, 6 feet south of the north curb line of that street). The officer's testimony indicates that Harris had told him that his car had not been moved after the accident, but this was not included in the statement signed by Harris. The officer's diagram showed only one position for the Harris car; and he testified that when he received information indicating that a car had been moved after an accident, he would make a notation to that effect. Here there was no such notation.

At the trial Harris, Baker and Coleman all testified that Coleman had been sitting in the right hand front seat of Harris' car and that Baker had been in the rear seat. They further testified that Coleman, who admitted that he had been drinking a good deal, became sick when the car backed into Bond Street, that he opened the door beside him and vomited into the street, and that Baker got out of the back of the car and went to close the front door beside Coleman. Baker said that he looked as he got out, did not see any car, and closed the rear door before walking to the front door to close it. In the statements given on the night of the accident Harris was reported to have said that Baker was sick and that Baker got out of the right front door and was hit by the other car as he was getting out, and that the door was also hit. Baker's statement, according to the officer, was that he was riding in the right front of a car driven by Harris and was getting out of the car in the middle of the street and that another car hit him and the door.

Baker and Harris both testified that they saw no lights on

the hit-and-run car. Neither saw it before the accident. They said that it did not stop for the intersection, though there was a stop sign (shown on the officer's diagram) requiring it to do so, and there is testimony that it was going considerably faster than the speed limit on Bond Street.

There were no marks from which the point of impact could be determined. Baker was found by the officer within the crosswalk area at a point 21 feet east of the west curb of Bond Street, (which would have been exactly in the middle of the street) and he told the officer that he had not moved from the place where he fell. Both Baker and Harris testified at the trial that he had not been moved.

The plaintiff submitted a "Prayer A" which he entitled "Motion for a Directed Verdict for the Plaintiff" by which he asked the court to instruct the jury that the uncontradicted evidence showed that an unidentified motorist had committed some nine violations of the motor vehicle laws "and that each of the above reasons and/or all of said reasons in concert was the direct and proximate cause of the accident and injuries suffered by the Plaintiff and therefore the Defendant is guilty of negligence." The trial court did not give this requested instruction, and marked "refused" a number of other prayers submitted by the plaintiff, including one relating to the burden of proof of contributory negligence and another to the effect that the plaintiff could not be found guilty of contributory negligence unless his negligence directly caused the accident.

The trial judge gave his own instructions. Early in the charge he stated that the burden of proof was on the plaintiff to sustain the facts upon which he rested his case, that the evidence might come from witnesses called by either party or by both (the police officer was so called) and that "[t]he same burden rests upon the defendant as to facts offered by the defendant to prove any affirmative defense."

With regard to the negligence of the unknown motorist and contributory negligence of the plaintiff the trial judge, after adverting to the rule that any comments of his on the facts were not binding, instructed the jury in substance that if they should find that the unidentified motorist was guilty of some half dozen violations of the motor vehicle laws (constituting

most of those catalogued in the plaintiff's Prayer A and referred to also in separate numbered prayers), then "the unidentified motorist was guilty of negligence, and if you further find the plaintiff free from any negligence contributing to the happening of the accident your verdict must be for the plaintiff." The judge then went on to say that the plaintiff's testimony was that he got out of the (Harris) car and was struck by another car, without lights, going at high speed, and that as a result his leg was broken in several places. To this he added: "There is no testimony to the contrary of that, so it is purely, as I see it, a matter if you believe what the witnesses say then your verdict must be for the plaintiff."

After the charge had been given the plaintiff excepted to the instructions with regard to contributory negligence on the ground that the court had not instructed the jury that the burden of proof of such negligence was upon the defendant. This colloquy followed:

> "(The Court) I said that. I said the burden is upon them for any affirmative defense. But I'll instruct them—
> "[Counsel for Defendant] I think that lights it up. You said that.
> "(The Court) I already said that in my charge, the burden is upon them. You may argue that."

Here this discussion ended.

In his further exceptions to the charge, the plaintiff, for the first time, asked for a directed verdict on both issues of negligence—that is on not only the unknown motorist's negligence, but also on his own freedom from contributory negligence. None of the plaintiff's prayers submitted prior to the giving of the court's instructions sought a directed verdict on this issue. One dealing with contributory negligence was a burden of proof prayer, another was to the effect that no contributory negligence could be charged to the plaintiff unless it was the (or a) direct cause of the accident, and a third was in substance that any negligence on the part of the driver of the car in which the plaintiff was a passenger was not to be imputed to the plaintiff.

Since we think, for reasons stated below, that the plaintiff

was not entitled in any event to a directed verdict on the issue of contributory negligence, we find it unnecessary to decide whether his motion for a directed verdict on that issue (in addition to such a motion relating to primary negligence) did not come too late. See Maryland Rule 552 a, which authorizes the filing by any party of a motion for a directed verdict in his favor on any or all of the issues "at the close of the evidence offered by an opponent or at the close of all the evidence." Cf. *Montauk Corp. v. Seeds,* 215 Md. 491, 500-501, 138 A. 2d 907.

All of the evidence bearing on the happening of the accident indicates that the plaintiff stepped out of the car when it was well out in the street, and the evidence adduced through the police officer strongly indicates that the plaintiff stepped out of the car in the middle of the street. That there may be some danger in so doing seems obvious. Stepping out of a place of safety into one of danger such as a street, without taking adequate precautions to guard against injury, may constitute contributory negligence, even though it may not constitute such negligence as a matter of law, and even though the person so doing may be a pedestrian at a crosswalk entitled to the right of way. See the discussion and cases cited in Judge Hammond's opinion in *Jackson v. Yellow Cab Co.,* 222 Md. 367, 160 A. 2d 612, a case in which a pedestrian having the right of way as she started across a street stopped on a safety island in an intersection and then put her hand and wrist out into a traffic lane and they were struck by a passing cab. (We think it not necessary to decide whether the plaintiff was or was not a pedestrian entitled to the right of way. He was apparently on foot in the crosswalk when hit, but he was not crossing the street.) In determining the question of contributory negligence (as well as any other question) any inconsistencies pertinent to the question at hand between, on the one hand, the testimony of the driver of the car and of the plaintiff as given on the stand, and, on the other, their statements made very soon after the accident as reported by the police officer, presented matters for the determination of the jury as the trier of the facts. *Cipriano v. Greenbelt Consumers Services, Inc.,* 226 Md. 577, 579, 174 A. 2d 583; *Day-*

*ton v. Davis,* 218 Md. 614, 618, 147 A. 2d 699. We are of the opinion that it was proper to submit the issue of contributory negligence to the jury.

The next question which we shall consider is whether the court did or did not properly instruct the jury with regard to the burden of proof of contributory negligence. The court did tell the jury that the defendant had the burden of proof on any affirmative defense. It did not, however, state that contributory negligence was such a defense. The instruction which we have quoted above to the effect that if the jury should find that the unidentified motorist was committing several violations of the motor vehicle laws and that the plaintiff was free of contributory negligence, the verdict must be for the plaintiff, was followed closely by the further instruction that there was no testimony to the contrary of the plaintiff's testimony that as he got out of the car he was struck and injured by a motorist driving at high speed, without lights, and that it was "purely * * * a matter if you believe what the witnesses say then your verdict must be for the plaintiff."

Taking these two parts of the instructions together, we think that they tended to give the impression that if the plaintiff's evidence failed to satisfy the jury that he was free of contributory negligence, as well as of the negligent acts of the unidentified motorist, the plaintiff was not entitled to recover. The plaintiff concedes, citing *Paul Construction Co. v. Powell,* 200 Md. 168, 88 A. 2d 837, that the jury was not bound to believe even uncontradicted testimony; but that did not shift the burden of proof of contributory negligence from the defendant to the plaintiff and require the plaintiff to prove himself free of it. We conclude that the effect of the instructions as given was likely to mislead the jury on this important, indeed vital, phase of the case. Hence, we think that there was prejudicial error, for which the judgment must be reversed. *Wintrobe v. Hart,* 178 Md. 289, 296-298, 13 A. 2d 365.

We think it unnecessary to consider at length the plaintiff's contention that he was entitled to a directed verdict on the question of the primary negligence of the unknown motorist or whether the instructions which he sought by his Prayer A were not too broad. In substance, the trial court gave such

462

an instruction, subject only to the qualification that the plaintiff's evidence be believed. In the light of the plaintiff's concession that even uncontradicted testimony does not have to be believed, he seems to have little, if any, ground for complaint on this score. It is settled that in a proper case, a verdict can be directed for the plaintiff on the issue of primary negligence of the defendant. Maryland Rule 552; *Dunnill v. Bloomberg*, 228 Md. 230, 179 A. 2d 371, and cases therein cited.

Because the question of contributory negligence will doubtless be in issue on any new trial, we have gone into that matter quite fully in this opinion.

For the error in the instructions as to the burden of proof on that issue the judgment is reversed.

*Judgment reversed, with costs, and case remanded for a new trial.*